[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 25, 2003
THOMAS K. KAHN
CLERK

No. 02-16210
Non-Argument Calendar

D.C. Docket No. 02-00094-CR-J-21

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES FINLEY TAYLOR,

Defendant-Appellant.

Appeal from the United States District Court for the
Middle District of Florida

(July 25, 2003)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

James Finley Taylor appeals the special conditions of supervised release

imposed on him pursuant to his conviction for use of interstate facilities to

transmit information about a minor "with the intent to entice, encourage, offer, or solicit any person to engage in [criminal] sexual activity" with the minor, 18 U.S.C. § 2425, and for possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(a).  We affirm.

## I. BACKGROUND

A woman hired Taylor to remodel her kitchen.[1]  About a month into the project, the woman informed Taylor that she was not happy with his work, would no longer require his services, and may choose not to pay him any more.

Taylor responded by engaging in a series of harassing and threatening activities, including posting a message on an internet bulletin board encouraging men to call the woman's 12-year-old daughter in order to engage in sexual activities.  The woman and her daughter reported receiving fifteen to thirty calls and that these calls emotionally traumatized the child.

Authorities searched Taylor's house, finding the computer that he used to post the message as well as seven firearms.  They seized the firearms because Taylor's 1986 guilty plea to a sexual battery charge involving his toddler daughter made him a convicted felon prohibited from possessing firearms.

---

[1] In order to protect their privacy, the names of the victims are not used.

Taylor pleaded guilty to use of interstate facilities, here, the internet, to transmit information about a minor "with the intent to entice, encourage, offer, or solicit any person to engage in [criminal] sexual activity" with the minor, 18 U.S.C. § 2425, and to possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(a). He was sentenced to 63 months imprisonment and three years of supervised release. On appeal, Taylor challenges the following special conditions of supervised release: (1) submission to polygraph testing, (2) restrictions on internet access, (3) registration as a sex offender, and (4) a restriction on visiting places where children congregate.

## II. SENTENCING CONSIDERATIONS

In fashioning a sentence, the district court must consider the factors listed in 18 U.S.C. § 3553(a). These include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant" and "(2) the need for the sentence imposed . . . (A) to reflect the seriousness of the offense . . .; (B) to afford adequate deterrence to criminal conduct . . .; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed . . . correctional treatment in the most effective manner . . . ." 18 U.S.C. § 3553(a). "The district court may impose any condition of supervised release it deems appropriate so long as it comports with the factors enumerated in § 3553(a)."

United States v. Zinn, 321 F.3d 1084, 1089 (11th Cir. 2003) (citing 18 U.S.C. § 3583(d)). "Similarly, the federal Sentencing Guidelines permit the sentencing court to impose any conditions of supervised release that are 'reasonably related' to the § 3553(a) factors, so long as the conditions 'involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a) and are consistent with any pertinent policy statements issued by the Sentencing Commission.' " Id. (citing United States Sentencing Guidelines (U.S.S.G.) § 5D1.3(b)). "We have observed it is not necessary for a special condition to be supported by each factor enumerated in § 3553(a). Rather, each is an independent consideration to be weighed." Id. (citing United States v. Bull, 214 F.3d 1275, 1278 (11th Cir. 2000)). "Moreover, while the Sentencing Guidelines recognize that a condition of supervised release should not unduly restrict a defendant's liberty, a condition is not invalid simply because it affects a probationer's ability to exercise constitutionally protected rights." Id.

### III. DISCUSSION

We review the district court's imposition of a special condition of supervised release for abuse of discretion, so long as the objection was preserved for appeal. See United States v. Bull, 214 F.3d 1275, 1278 (11th Cir. 2000). We will reverse only if we have a "definite and firm conviction that the [district] court

4

committed a clear error of judgment in the conclusion it reached." Davenport Recycling Assoc. v. Cmm'r, 220 F.3d 1255, 1258 (11th Cir. 2000).

## A. SUBMISSION TO POLYGRAPH TESTING

As a special condition on Taylor's supervised release, the district court ordered Taylor to "participate in a mental health program specializing in sexual offender treatment approved by the probation officer, and abide by the rules, requirements and conditions of the treatment program, including submitting to polygraph testing to aid in the treatment and supervision process." Taylor makes five challenges to the polygraph testing.

First, Taylor contends that the polygraph testing is not reasonably related to his conviction under the standards listed in 18 U.S.C. § 3553(a), quoted in Section II above. Given his record, we disagree. The district court required polygraph testing to help insure Taylor's compliance with the supervised release terms imposed on him.[2] Following his 1986 conviction, Taylor failed to comply with the terms of his supervised release and that release was revoked. The district court also required the polygraph testing to help insure that Taylor receives the mental

---

[2]We have recognized that examinations of this kind help insure compliance with the conditions of supervised release because probationers fear that any false denials of violations will be detected. Owens v. Kelly, 681 F.2d 1362, 1364, 1369-70 (11th Cir. 1982) (discussing Psychological Stress Evaluation examinations).

health/sexual offender treatment he requires. Taylor's 1986 conviction was for sexual battery of his toddler daughter. Taylor's current conviction is based on his extreme reaction to a contractual dispute which ultimately resulted in his placing a 12-year-old-child in harm's way by presenting her as a willing victim for pedophiles. Under these circumstances, the district court did not abuse its discretion in determining that the polygraph testing is reasonably related to the factors listed in 18 U.S.C. § 3553(a). Compare United States v. Zinn, 321 F.3d 1084, 1089-90 (11th Cir. 2003). Further, the polygraph testing does not, as Taylor suggests, result in an "excessive deprivation of [his] liberty interests."

Second, Taylor contends that the polygraph testing condition is so vague that it "delegat[es]. . .judicial responsibility to the probation office and deprives Taylor [of] notice of what is required of him." We rejected this argument in Zinn, although the review was only for plain error because the objection had not been preserved for appeal. Zinn, 321 F.3d at 1087, 1092. In Zinn, we recognized that the sentencing guidelines "expressly permit[ ]" the district court to require defendants to " 'participate in a mental health program approved by the United States Probation Office,' " and we repeated our firm belief that probation officers play a vital role in effectuating the sentences imposed by district courts. Id. at 1092 (quoting U.S.S.G. § 5B1.3(d)(5), p.s. and citing United States v. Bernardine,

6

237 F.3d 1279, 1283 (11th Cir. 2001)). In Bernardine, we said that a probation officer "is appointed by the district court and acts. . . under the discretion of the appointing court," is an "arm of the court," and is "a liaison between the [district] court . . . and the defendant." Bernardine, 237 F.3d at 1282-83 (citations and internal marks omitted). We also said that "a probation officer is statutorily mandated to perform any other duty that the court may designate" and that we interpret this grant of authority broadly, though it is limited by Article III of the Constitution which prohibits the delegation of judicial functions. Id. at 1283 (citations and internal marks omitted). For these reasons, the district court in this case did not abuse its discretion.

Third, Taylor contends that the polygraph testing condition violates his Fifth Amendment privilege against self-incrimination. He argues that the district court's failure to specify the subject matter of the testing means that he could be asked questions that incriminate him, and that Florida law would require the examiner to report those answers, thereby subjecting Taylor to criminal liability. However, Taylor's injury is entirely speculative because no incriminating questions have been asked. See Zinn, 321 F.3d at 1091. Because Taylor has not been compelled to testify despite a valid claim of privilege, we can "only decide whether requiring polygraph testing as a condition of supervised release generally

7

violates the Fifth Amendment so as to amount to [an abuse of discretion]." Id. at 1092. Zinn held there was no plain error. Id. We hold there was no abuse of discretion.

Fourth, Taylor contends that the district court improperly ordered him "to pay the costs of polygraph examinations, notwithstanding its conclusion that [he] did not have the ability to pay a fine." What the district court's order actually says is: "[T]he defendant shall contribute to the costs of such treatment and/or polygraphs, not to exceed an amount determined reasonable by the probation officer based on ability to pay or availability of third-party payment and in conformance with the probation office's applicable sliding scale." Taylor's argument is meritless.

Finally, Taylor contends that the cumulative effect of his arguments requires that we find that the district court abused its discretion. We disagree. Taylor's arguments, which are inadequate individually, are no more adequate collectively.

## B. RESTRICTIONS ON INTERNET ACCESS

Taylor contends that the special condition prohibiting him from using or possessing a computer with internet access is unreasonable and overbroad. Further, he maintains that "[b]ecause the court authorized [the probation officer] to search [his] computer hard drives and other applications, the probation officer

could easily monitor [his] use of the computer." He concludes that this restriction fails because it is ambiguous and impinges upon his First Amendment right to use computers for legitimate purposes.[3]

In Zinn, we addressed restrictions on internet access. Id. at 1092. In the face of Zinn's challenges that the restriction was both unconstitutionally overbroad and not reasonably related to the appropriate sentencing considerations (set forth in Section II above), we found no abuse of discretion. Id. at 1092-94. While recognizing the value of the internet for legitimate purposes, we were also cognizant of the dangers to the public when sex offenders are on-line. Id. at 1093. Here, we agree with the government that Taylor's crime was not merely enabled by the internet. In fact, he used the internet as his tool to harass his former client and to endanger her daughter by capitalizing on the internet's effectiveness as a means of reaching pedophiles. Restrictions on Taylor's internet access are undeniably related to the factors listed in 18 U.S.C. § 3553(a).

As to his other arguments, if Taylor has a legitimate need to use a computer after his release, the district court's order authorizes his probation officer to allow

---

[3]Taylor also argues in this appeal for the first time that the internet restrictions are unnecessary to the extent that they prohibit him from possessing child pornography which is already against Florida law. However, the child pornography restriction is a separate condition and any issue involving it is not properly before us because it was not raised in the district court. In any event, Taylor's argument is meritless.

that use. Also, the district court did not abuse its discretion in authorizing the probation office to monitor Taylor's compliance with this condition by searching Taylor's computer hard drive and other applications, especially in light of the qualification that "[t]he inspection shall be no more intrusive than necessary to insure compliance." Finally, we reject Taylor's arguments that the district court's order is ambiguous because it is not clear whether he may use a computer which is capable of being connected to the internet but is not connected, or whether he may use other technology, such as a phone or television, to access the internet.

## C. REGISTRATION AS A SEX OFFENDER

Taylor pleaded guilty to violating 18 U.S.C. § 2425, which is codified in chapter 117 of title 18. The sentencing guidelines mandate that individuals convicted under that chapter register as sex offenders. U.S.S.G. § 5D1.3(a) (requiring, in pertinent part, individuals described by 18 U.S.C. § 4042(c)(4) to register as sex offenders); 18 U.S.C. § 4042(c)(4) (describing individuals convicted under chapter 117 of title 18 as among those subject to the sex offender registration requirement). Accordingly, the district court required Taylor to register as a sex offender. Taylor challenges this special condition.

Taylor argues that he has a procedural due process right to a hearing before being stigmatized as a sex offender. A panel of this Court recently rejected this

precise argument under indistinguishable circumstances. See United States v. Veal, 322 F.3d 1275 (11th Cir. 2003). Taylor first relies on Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999), which is inapplicable because the defendant in Kirby, unlike Taylor, was never convicted of a sex crime. See Veal, 322 F.3d at 1277. Taylor next relies on Doe v. Dep't of Public Safety, 271 F.3d 38 (2d Cir. 2001), reversed ___ U.S. ___, 123 S.Ct. 1160 (2003). Doe was never binding precedent on this Court, see Veal, 322 F.3d at 1278 (citing United States v. Rosenthal, 763 F.2d 1291, 1294 n. 4 (11th Cir.1985)), and has recently been reversed, see Connecticut Department of Safety v. Doe, ___ U.S. ___, 123 S.Ct. 1160 (2003). As Taylor cannot present binding precedent to support a convicted sex offender's due process right to a hearing prior to imposing the special condition mandated by the sentencing guidelines, the district court did not abuse its discretion by not conducting a hearing. See Veal, 322 F.3d at 1278-79.

## D. RESTRICTION ON VISITING PLACES WHERE CHILDREN CONGREGATE

Taylor also challenges the special condition on his supervised release that he have no direct contact with minors without his probation officer's written approval and that he "refrain from entering into any area where children frequently congregate, including schools, day care centers, theme parks, playgrounds, etc."

Taylor maintains that the condition is vague because the list uses the term "etc." Conceivably, he suggests, the restriction could extend to churches, libraries, fast food restaurants, movie theaters, and shopping malls. Moreover, he asserts that the restriction does not put him on notice of "how many young people must be present to trigger the condition . . . ." He concludes that the restriction has "the potential to severely curtail, if not eliminate, [his] freedom of movement and association," and "[l]eft to the discretion of the probation office, [he] could be conceivably restricted from the majority of public locations."

Once again, Zinn raised this same challenge and we rejected it. Zinn, 321 F.3d at 1088. However, we did so without elaboration. Id. While the same process is justified here, we note that our sister Circuits have provided persuasive arguments in support of the conclusion stated in the Zinn opinion. See United States v. Paul, 274 F.3d 155, 167 (5ᵗʰ Cir. 2001), cert. denied, 535 U.S. 1002, 122 S.Ct. 1571 (2002) ("Sentencing courts must inevitably use categorical terms to frame the contours of supervised release conditions. Such categorical terms can provide adequate notice of prohibited conduct when there is a commonsense understanding of what activities the categories encompass."); United States v. Gallo, 20 F.3d 7, 12 (1ˢᵗ Cir. 1994) ("[T]hough a probationer is entitled to notice of what behavior will result in a violation, so that he may guide his actions

accordingly, fair warning is not to be confused with the fullest, or most pertinacious, warning imaginable. Conditions of probation do not have to be cast in letters six feet high, or to describe every possible permutation, or to spell out every last, self-evident detail.") We hold that the district court did not abuse its discretion.

## IV. CONCLUSION

Because the special conditions imposed by the district court are reasonably related to factors set forth in 18 U.S.C. § 3553(a), and because the special conditions do not impinge upon Taylor's constitutional rights, we find that the district court did not abuse its discretion by imposing the special conditions of supervised release.

**AFFIRMED.**