[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-16486
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 27, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-20739-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH TOME,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 27, 2010)

Before HULL, PRYOR and MARTIN, Circuit Judges.

HULL, Circuit Judge:

Because Defendant Joseph Tome committed 13 violations of his supervised

release, the district court revoked the 3-year supervised release on Tome's child pornography conviction and sentenced Tome to 24 months' imprisonment, followed by one year of supervised release with additional conditions. Tome appeals his 24-month sentence and the one-year Internet ban that is a condition of his current one-year supervised release to follow his 24-month sentence. After review, we affirm.

## I. BACKGROUND

### A. Underlying Child Pornography Conviction

In December 2005, Tome pled guilty to one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The indictment charged that Tome knowingly possessed computer files stored on a computer hard drive that contained images of child pornography. Tome's plea was based on a factual proffer in which he admitted that he possessed several computer disks containing over 100,000 images of child pornography, including over 1,000 images of known child victims; that all of these images were downloaded from the Internet; that many of these images were depictions of prepubescent minors or minors under the age of 12; and that more than 10 of the images depicted sexual exploitation of minors. In his factual proffer, Tome stated he maintained an Internet service account in his own name through the Internet service provider Earthlink. Tome

2

stated he viewed and downloaded child pornography from a website called eCircles.com, using as his e-mail address jabezstone90@hotmail.com, and identifying himself as "Jabez Stone." Tome admitted he understood the difference between child and adult pornography, maintained an "extensive" collection of both adult and child pornography downloaded to his computer from the Internet, and owned about 10 videos of child pornography as well as several comic books and stories related to sex with children. In July 2006, the district court sentenced Tome on the one count of possession of child pornography to 27 months' imprisonment, followed by 3 years' supervised release. Because the district court gave Tome credit for time served, Tome's 3-year term of supervised release began on September 14, 2007.

Tome's initial supervised release was subject to several special conditions, which required that he, inter alia, (1) submit a truthful and complete written report to his probation officer each month, (2) answer truthfully all inquiries by his probation officer, (3) not associate with any persons convicted of a felony without permission from his probation officer, (4) have no personal, mail, telephone, or computer contact with minors, (5) keep a daily log of all addresses or sites accessed on any personal computer, and (6) not commit another federal, state, or local crime. Tome's initial supervised release allowed him to use the Internet for

authorized employment purposes, but he had to maintain for his probation officer a daily log of all other Internet use, including use for personal reasons.

## B.    Supervised Release Violations

On August 5, 2009 (during his second year of supervised release), Tome was arrested for violating the conditions of his supervised release. At his revocation hearing, Tome pled guilty to these multiple supervised release violations: (1) importing or transporting obscene matters, in violation of 18 U.S.C. § 1462(a), based on Tome's sending to an inmate a graphic letter (which was introduced at sentencing and which described graphically Tome having sex with at least seven children); (2) failing to register as a sex offender in violation of Florida law; (3) associating with eight convicted felons, six of whom were convicted of sex-related crimes involving minors or child pornography, when Tome sent e-mails and letters to them; (4) failing to submit a truthful and complete written monthly report, when Tome reported he was not having contact with people who had criminal records; (5) failing to answer truthfully all inquiries by his probation officer, when Tome stated he used the Internet and computers only for employment purposes but in fact had accessed the Internet and several computers for personal reasons; and (6) failing to maintain a daily log of Internet addresses accessed via any personal computer, when he used both his employment computer and his

4

friends' computers for personal use, as evidenced by his admission and copies of e-mail correspondence between him and a convicted felon.[1] The district court directed both parties to prepare sentencing memoranda as to the applicable law and potential sentences for Tome.

**C.    Sentencing**

In his sentencing memorandum, Tome stated that since his underlying offense was a Class D felony, his statutory maximum term of imprisonment (for his supervised release violations) was two years, pursuant to 18 U.S.C. § 3583(e)(3). Tome stated that two of his supervised release violations were Grade B violations, the others being Grade C, pursuant to U.S.S.G. § 7B1.1. With a criminal history category of I, Tome argued his advisory guidelines range was 4 to 10 months' imprisonment, pursuant to U.S.S.G. § 7B1.4, and requested the low-end guidelines sentence of 4 months' imprisonment. Tome argued his supervised release violations "stem[med] from a central problem: communications with inmates [Tome] met while incarcerated." Tome stated the majority of his contact with the convicted felons was through letters, but admitted that one of the letters included a "graphic, but fictional account of sexual activity" and that he had communicated with one of the convicted felons over e-mail. It is undisputed that

---

[1] The arrest warrant also alleged Tome violated the terms of his supervised release by having unsupervised contact with minors, but the government dismissed that charge.

six of the eight convicted felons were themselves sex offenders.

The government's sentencing memorandum agreed with Tome's 4- to 10-month advisory guidelines range calculation and, in exchange for Tome's guilty plea, agreed to recommend that Tome receive the low-end advisory guidelines sentence of 4 months. However, the government pointed out that Tome could be criminally prosecuted for conduct to which he admitted in pleading guilty to the supervised release violations, including (1) Tome's sending another sex-offender felon a letter describing in a graphic manner Tome's having sex with at least 7 children, for which Tome could be charged with importation and transportation of obscene matters and providing contraband to a sex-offender inmate, in violation of 18 U.S.C. §§ 1462(a) and 1791(a)(1); (2) his denying to his probation officer that he communicated with sex offenders when he had in fact communicated by e-mail with a sex offender inmate, for which Tome could be charged with making false statements to a federal agent, in violation of 18 U.S.C. § 1001(a)(2); and (3) Tome's failing to register his seven e-mail addresses he used to contact sexual predators and other inmates.

At sentencing, the district court considered Tome's conviction for possession of child pornography and that, prior to that conviction, he also had been charged with indecent exposure, for which adjudication was withheld and where a

minor victim accused Tome of exposing his penis to her on five separate occasions. The district court also considered that Tome admitted to 13 violations of his supervised release on his underlying Internet-related child pornography offense, including (1) inappropriate contact with sex offender inmates (using the Internet); (2) sending a letter to a sex offender inmate detailing Tome's having sex with at least seven minors; (3) failing to register at least six of his e-mail addresses; (4) using these multiple e-mail addresses to communicate with sex offender inmates over the Internet and meet women; and (5) accessing the Internet using his home computer, as well as that of his employer, his wife, and his landlord.

The probation officer noted Tome's participation in his sex offender treatment sessions was "minimal and marginal" and that he was "lacking in motivation, defensive and arrogant." The district court stated a sentence above the advisory guidelines range was appropriate so that Tome could participate in a 12- to 18-month intensive residential sex offender treatment program while incarcerated.

The district court sentenced Tome to 24 months' imprisonment, followed by one year of supervised release, during which year Tome would be prohibited from, inter alia, accessing the Internet. The court stated that its decision to restrict Tome's Internet access was based on his admissions of inappropriate use of the

Internet while already on supervised release (for an underlying Internet-related child pornography conviction), namely, his using the Internet to communicate with sex-offender inmates, to meet women, and for personal reasons. Tome objected that this sentence was unreasonable and that the conditions of his new, one-year supervised release were more restrictive than necessary and in violation of his constitutional rights.

## II. DISCUSSION

## A.   Internet Ban as Condition of Supervised Release

Tome argues the condition of his one-year supervised release – imposing a one-year ban on all access to the Internet – is unreasonably broad, unduly restrictive, and violates his constitutional rights.[2]

A district court may impose any condition of supervised release it deems appropriate so long as it comports with the factors enumerated in 18 U.S.C.

---

[2]We review the imposition of special conditions of supervised release for abuse of discretion. United States v. Moran, 573 F.3d 1132, 1137 (11th Cir. 2009), cert. denied, 130 S. Ct. 1879 (2010). "We will reverse only if we have a definite and firm conviction that the [district] court committed a clear error of judgment in the conclusion it reached." Id. (quotation marks omitted).

The government argues that Tome failed to raise this claim in the district court and thus his challenge to the Internet ban as a condition of his supervised release is "arguably subject to plain error review." The sentencing transcript shows that Tome did generally object to "the additional conditions on his supervised release as more restrictive than necessary and possibly violations of his constitutional rights." However, Tome did not refer specifically to the Internet ban. Given that Tome has shown no abuse of discretion in any event, we need not determine whether plain error review applies.

§ 3553(a).  18 U.S.C. § 3583(d); United States v. Zinn, 321 F.3d 1084, 1089 (11th Cir. 2003).  The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

A district court may impose a supervised release condition that: (1) is "reasonably related" to the § 3553(a) factors, (2) involves "no greater deprivation of liberty than is reasonably necessary for the purposes set forth" in § 3553(a), and (3) is "consistent with any pertinent policy statements issued by the Sentencing Commission."  Zinn, 321 F.3d at 1084 (quoting U.S.S.G. § 5D1.3(b)).  It is not necessary for a special condition to be supported by each § 3553(a) factor; rather, each factor is an independent consideration to be weighed.  United States v. Taylor, 338 F.3d 1280, 1283 (11th Cir. 2003).  "'Moreover, while the Sentencing Guidelines recognize that a condition of supervised release should not unduly

restrict a defendant's liberty, a condition is not invalid simply because it affects a probationer's ability to exercise constitutionally protected rights.'" Id. (quoting United States v. Bull, 214 F.3d 1275, 1278 (11th Cir. 2000)).

Given that Tome violated his first supervised release by having inappropriate Internet contact with other convicted sex offenders, that his underlying conviction involved child pornography downloaded from the Internet to his personal computer, and his prior criminal history, Tome has not shown the district court abused its discretion in imposing a one-year Internet ban as a condition of Tome's second supervised release. Specifically, Tome violated the terms of his prior supervised release by using the Internet on multiple computers to communicate with sex offenders; failing to register at least six e-mail addresses, which he then used to communicate with sex-offender inmates; and sending a graphic letter to one inmate describing Tome's having sex with at least seven children – conduct related to the very offense for which Tome was originally convicted. Tome's underlying conviction for possession of child pornography also concerned child images obtained from the Internet, and his prior criminal history includes his exposing his penis to a minor on five occasions. Child pornography is freely available on the Internet, and its usage is hard to monitor.

On these facts, a year-long Internet ban is reasonably related to multiple

10

§ 3553(a) factors, including the nature of Tome's offenses and supervised release violations, the need to deter Tome from a second round of supervised release violations and from downloading and distributing child pornography, to reflect the seriousness of his 13 supervised release violations, to help Tome with his rehabilitative treatment, to provide just punishment, and, in particular, to protect both the child victims used in Internet pornography and children who use the Internet. See United States v. Moran, 573 F.3d 1132, 1141 (11th Cir. 2009) ("Although the internet provides valuable resources for information and communication, it also serves as a dangerous forum in which an offender can freely access child pornography and communicate with potential victims."), cert. denied, 130 S. Ct. 1879 (2010); Zinn, 321 F.3d at 1092 (noting the "strong link between child pornography and the Internet, and the need to protect the public, particularly children, from sex offenders"). Indeed, courts have upheld similar sex-offender supervised release conditions of significantly longer duration. See Moran, 573 F.3d at 1140-41 (upholding 3-year term of supervised release requiring sex-offender defendant to obtain probation officer's permission to access Internet); Zinn, 321 F.3d at 1086-87, 1093 (upholding 3-year Internet ban, with exception upon probation officer approval, where defendant was convicted of possession of child pornography); United States v. Johnson, 446 F.3d 272, 274, 283 (2d Cir.

11

2006) (upholding unconditional 3-year Internet ban for sex offender); United States v. Paul, 274 F.3d 155, 160, 170 (5th Cir. 2001) (upholding unconditional 3-year term of supervised release prohibiting defendant from using "computers, the Internet, . . . or any item capable of producing a visual image" where defendant was convicted of possessing child pornography); see also Taylor, 338 F.3d at 1286 (upholding 3-year term of supervised release prohibiting defendant from "entering into any area where children frequently congregate" where defendant was convicted of using the Internet to encourage persons to engage in criminal sexual activity with a minor).

We also reject Tome's contention that his Internet ban is a greater deprivation of liberty than reasonably necessary. Tome was convicted of child sex offenses involving the Internet and then violated his initial supervised release conditions by using the Internet to contact other sex offenders. Tome's case involved his first being put on supervised release that allowed him limited access to the Internet for employment-related reasons and required him to disclose to his probation officer all non-employment-related Internet use. Tome promptly violated those conditions multiple times. He not only failed to disclose that he accessed the Internet for personal reasons, but also used the Internet to contact by e-mail six sex offenders, several of whom also had child pornography convictions.

Tome has shown his unwillingness to conform his behavior to more-lenient restrictions.

Although Tome argues the year-long Internet ban would prevent him from submitting on-line job applications and performing jobs that require use of the Internet, Tome does not state which jobs he might be qualified for or whether any of those potential jobs would require him to use the Internet.[3] Tome has not shown a day-to-day vocational need for the Internet. Nor does Tome articulate how his expressive activities will be adversely affected by the Internet ban.

We acknowledge that Tome relies on cases from other circuits concluding in certain circumstances that an Internet access ban during a term of supervised release is impermissible. But these cases are materially different because they involve a lengthier Internet ban, do not specify the duration of the ban, involve criminal conduct that was unrelated to the Internet, or do not involve a prior supervised release violation. See, e.g., United States v. Heckman, 592 F.3d 400, 403, 407 (3d Cir. 2010) (lifetime Internet ban and no prior supervised release violation); United States v. Holm, 326 F.3d 872, 874, 877-78 (7th Cir. 2003) (length of supervised release not specified, no prior supervised release violation,

---

[3]Tome's presentence investigation report stated, as to Tome's occupation, that he "worked odd jobs," such as "acting as a translator, typing documents and assisting people with filling out immigration documents."

13

and defendant had a 30-year history of working in computer telecommunications and intended to be so employed during his supervised release); United States v. Sofsky, 287 F.3d 122, 124 (2d Cir. 2002) (3-year Internet ban and no prior supervised release violation); United States v. Peterson, 248 F.3d 79, 81 (2d Cir. 2001) (5-year Internet ban, no prior supervised release violation, and defendant's underlying conviction was for bank larceny and did not involve computers or the Internet); United States v. White, 244 F.3d 1199, 1201 (10th Cir. 2001) (2-year Internet ban and violation of supervised release was only for drinking alcohol); see also United States v. Miller, 594 F.3d 172, 175, 185-86 (3d Cir. 2010) (lifetime Internet ban and no prior supervised release violation).

Also, some cases have upheld even lifetime Internet bans where the supervised release prohibited the defendant's access to the Internet without the probation officer's prior approval. See United States v. Stults, 575 F.3d 834, 837, 855-56 (8th Cir. 2009) (upholding lifetime ban prohibiting defendant from accessing the Internet, except for employment purposes, without prior approval of probation officer); United States v. Boston, 494 F.3d 660, 663, 664 (8th Cir. 2007) (upholding lifetime ban permitting defendant to obtain computer access only with prior written approval of probation officer); United States v. Alvarez, 478 F.3d 864, 865 (8th Cir. 2007) (upholding lifetime ban prohibiting all Internet access at

14

home and allowing access in other locations only with prior approval of probation officer). And this district court's one-year ban is far shorter than the multi-year or lifetime bans in the cases cited by Tome.

For all of these reasons, and under the particular circumstances of this case, Tome has not shown the district court abused its discretion in imposing an Internet ban as a condition of his one-year supervised release.

## B.      Imprisonment Sentence

Tome also argues his 24-month imprisonment sentence is unreasonable. We review the reasonableness of a sentence for abuse of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances. Id. The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors. United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).

"If, after correctly calculating the guidelines range, a district court decides that a sentence outside that range is appropriate, it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" United States v. Williams, 526 F.3d 1312, 1322 (11th

15

Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007)).  Likewise, although "[s]entences outside the guidelines are not presumed to be unreasonable, . . . we may take the extent of any variance into our calculus." United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir.), cert. denied, 129 S. Ct. 2847 (2009).  However, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Gall, 552 U.S. at 51, 128 S. Ct. at 597.

Here, Tome has not met his burden to show his 24-month sentence was procedurally or substantively unreasonable.  Procedurally, Tome does not dispute the district court's calculation of his advisory guidelines range of 4 to 10 months.  The record belies Tome's claims that the court failed to provide an adequate explanation of its decision to impose an upward variance.  To the contrary, the district court explained that it was imposing an upward variance based on Tome's admission to 13 violations of his supervised release and that the sentence would provide time for Tome to complete a 12- to 18-month sex offender treatment program while incarcerated.

Nor has Tome shown that his 24-month sentence is substantively unreasonable.  Tome's supervised release violations involve conduct related to his underlying conviction for possession of child pornography; he has a withheld

16

adjudication on a charge of showing his penis to a minor on several occasions; and he was "lacking in motivation, defensive and arrogant" during his sex offender treatment sessions, in which his participation was "minimal and marginal." And the sentence affords Tome time to participate in a 12- to 18-month sex offender treatment program.

Based on these facts, the district court concluded an upward variance was "appropriate, reasonable and just." The district court's stated concerns over Tome's rehabilitation and criminal history were sufficiently compelling to support the degree of the variance. See, e.g., Shaw, 560 F.3d at 1240-41 (affirming an 83-month upward variance based in large part on district court's concern over defendant's long criminal history that was undeterred by shorter sentences). Under the totality of the circumstances, we cannot say the district court's decision to impose a 24-month sentence was an abuse of discretion.

Tome also argues that the sentence was unreasonable because, in imposing an upward variance, the district court took into account his 1991 withheld adjudication and his admission to sending a sex-offender inmate an obscene letter describing Tome's having sex with at least seven children, in violation of 18 U.S.C. § 1462(a). As to the 1991 withheld adjudication, the district court was free to consider any information relevant to Tome's "background, character, and

conduct" in imposing an upward variance. 18 U.S.C. § 3661; see also United

States v. Faust, 456 F.3d 1342, 1348 (11th Cir. 2006) (concluding sentencing court

could consider facts underlying acquitted conduct). As to the letter, because Tome

unconditionally admitted and pled guilty to sending the letter in violation of 18

U.S.C. § 1462(a), he waived all challenges to the factual basis underlying that

violation and all other non-jurisdictional challenges to it. See United States v.

Betancourth, 554 F.3d 1329, 1332 (11th Cir. 2009); United States v. Fairchild, 803

F.2d 1121, 1124 (11th Cir. 1986). Thus, Tome has not shown the district court

abused its discretion in considering his 1991 withheld adjudication or his sending

the letter.[4]

    **AFFIRMED.**

---

[4]Tome's final argument that the district court improperly accorded weight to certain
§ 3553(a) factors also fails.