[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11143
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cr-00218-CEM-DCI-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID PADILLA-RIVERA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 20, 2020)

Before JORDAN, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

David Padilla-Rivera appeals the 24-month term of imprisonment imposed

following the second revocation of his supervised release.  We affirm.

I.

In 2010, Padilla-Rivera was convicted in Orange County, Florida of false imprisonment, attempted sexual battery, and assault of a 16-year-old female. About a year after his release from state custody, Padilla-Rivera failed to register as a sex offender, as required by the Sex Offender Registration and Notification Act.  He later pleaded guilty to one count of failing to register, in violation of 18 U.S.C. § 2250(a), and was sentenced to 27 months' imprisonment followed by 10 years' supervised release.

Padilla-Rivera completed his term of imprisonment and began his first term of supervised release in October 2017.  Two months later, however, the probation officer petitioned the district court to issue a warrant based on Padilla-Rivera's failure to notify the probation officer of his change of address and change in employment.  The district court revoked Padilla-Rivera's supervised release and sentenced him to 14 months' imprisonment followed by another 10-year term of supervised release.  At the revocation hearing, the district court explained to Padilla-Rivera that, among other conditions of his new term of supervised release, he would be prohibited from possessing or using a computer—including a smartphone or other handheld device capable of connecting to the internet— without prior written approval from his probation officer.

2

After completing his new custodial sentence, Padilla-Rivera began his second term of supervised release on December 22, 2018. The same day, he obtained a smartphone and began using it to access the internet.

The next day, Padilla-Rivera met with his probation officer and told him that he had gotten a new cell phone. The probation officer did not examine the phone, although Padilla-Rivera offered to show it to him. During their meeting, the probation officer went over the terms of Padilla-Rivera's supervised release, including the prohibition on possessing a smartphone or otherwise accessing the internet without written permission from his probation officer. Padilla-Rivera did not inform the probation officer that his new phone was a smartphone or get his permission to use the phone to access the internet.

Over the next several days, Padilla-Rivera used his smartphone to conduct numerous pornography-related internet searches. Based on a later forensic examination of the smartphone, none of the search terms that Padilla-Rivera entered were specifically related to child pornography, but a few were concerning, including searches for "young ebony teens," "young Puerto Rican girl from a slum," and "stepbrother and stepsister."

On December 27, 2018, Padilla-Rivera brought his smartphone with him to the federal courthouse when reporting to his probation officer for a drug test. Courthouse security notified the probation office so that a probation officer could

3

take the phone and Padilla-Rivera could enter the courthouse.  When the probation officer discovered that the phone was a smartphone and asked Padilla-Rivera about it, he initially denied having access to the internet.  Later, however, Padilla-Rivera admitted that he had used the phone to watch music, car, and animal videos on the internet, even though he knew that he was not supposed to have a smartphone.  He also admitted that he had watched pornography on the phone, but claimed that he had accidentally accessed pornographic videos after entering the letter "F" as a search term.  But the results of the government's forensic examination of the smartphone contradicted this claim, showing that Padilla-Rivera had entered numerous pornography-related search terms—the list of search terms was apparently many pages long—most of which did not begin with the letter "F."

About two weeks after the probation office seized Padilla-Rivera's smartphone, he tested positive for cocaine and marijuana and admitted that he had also used heroin.  The probation officer petitioned the district court for a warrant, alleging that Padilla-Rivera had violated the conditions of his supervised release by accessing the internet and by using heroin, cocaine, and marijuana.

Padilla-Rivera admitted to those violations but claimed that his probation officer had known that he had a smartphone because the probation officer had looked at the phone during their meeting on December 23.  He also implied that his use of the internet may have been unintentional because he was "just not

4

sophisticated with the cell phone." Regarding the drug violations, Padilla-Rivera stated that he was in treatment for drug addiction, and that relapses were part of the recovery process.

The court stated that it had "grave concerns" over Padilla-Rivera's smartphone use, which began immediately after his release from prison and included search terms that were troubling given Padilla-Rivera's prior sex offense against a minor. The court rejected Padilla-Rivera's implication that his use of the internet may have been accidental, commenting that the probation officer had looked like he was "flipping through the pages of a phone book" when reading the long list of search terms that Padilla-Rivera had entered.

Based on Padilla-Rivera's repeated and "complete disregard for the Court's order," his history of attempted sexual battery against a 16-year-old, and the extent and nature of his internet searches for pornography, the district court concluded that Padilla-Rivera was "a danger. And he's not going to stop doing this, certainly not while on supervised release." The district court revoked Padilla-Rivera's supervised release and varied above the Guidelines range (8–14 months) to the statutory maximum sentence of 24 months' imprisonment. On appeal, Padilla-Rivera argues that his sentence was substantively unreasonable because his "run-of-the-mill" violations did not justify the court's "major" upward variance.

5

II.

When a defendant violates a condition of supervised release, the district court may revoke the term of supervised release and impose a prison term. 18 U.S.C. § 3583(e)(3). We review the sentence imposed by the district court upon the revocation of supervised release for reasonableness, using an abuse-of-discretion standard. *See United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016). That standard "allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (citation omitted). "In the face of this discretion, it is only the rare sentence that will be substantively unreasonable." *United States v. McQueen*, 727 F.3d 1144, 1156 (11th Cir. 2013). "A district court's findings of fact are binding on this court unless clearly erroneous." *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993) (citation omitted)).

III.

We examine the substantive reasonableness of a sentence by considering the "totality of the circumstances" and whether the sentence achieves the purposes outlined in 18 U.S.C. § 3553(a). *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009). Upon the revocation of supervised release, the district court must consider the following § 3553(a) sentencing factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

6

(2) the need to deter criminal conduct, protect the public, and provide the defendant with needed education, training, or treatment; (3) the applicable Sentencing Guidelines, including the Guidelines range and associated policy statements; (4) avoiding unwarranted sentencing disparities; and (5) restitution to the victims of the offense, if any.  18 U.S.C. § 3553(a)(1), (a)(2)(B)–(D), (a)(4)–(7); *see* 18 U.S.C. § 3583(e).  The Guidelines state that, in sentencing a defendant upon the revocation of supervised release, the district court should "sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."  U.S.S.G. Ch. 7, Pt. A intro. comment. 3(b).  It is appropriate for the district court to consider "the nature of the conduct leading to the revocation" in measuring the extent of the defendant's breach of trust.  *Id.*

If the district court varies upward from the applicable Guidelines range, "it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'"  *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (citation omitted).  A "major" variance from the Guidelines range requires a more significant justification than a minor one.  *Irey*, 612 F.3d at 1186–87.  But we do not presume that a sentence outside the Guidelines range is unreasonable, and we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent

7

of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007).  A district court is "free to consider any information relevant to [a defendant's] 'background, character, and conduct' in imposing an upward variance." *United States v. Tome*, 611 F.3d 1371, 1379 (11th Cir. 2010) (quoting 18 U.S.C. § 3661).  "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors." *Id.* at 1378.

Here, based on the "incredibly long list of internet search terms for adult pornography" that Padilla-Rivera had entered into his smartphone during the first six days of his supervised release, the district court found that Padilla-Rivera's internet use was not accidental as he claimed.  The court found that Padilla-Rivera's pattern of violating the conditions of supervised release almost as soon as he was released from prison showed that he did not care about complying with the court's orders.  For this reason, after considering the § 3553(a) sentencing factors and the relevant Sentencing Guidelines and policy statements, the district court varied upward and imposed the statutory maximum sentence of imprisonment.

This sentence was at least "tenable, or, we might say, 'in the ballpark' of permissible outcomes." *Irey*, 612 F.3d at 1189 (citation omitted).  Given Padilla-Rivera's history of committing a violent sex offense against a minor, repeatedly disregarding conditions imposed to deter him from reoffending, and habitually using illegal drugs, the district court did not clearly err in finding that he was a

8

danger to the public.  *See Almand*, 992 F.2d at 318.  And his latest violations—which were immediate, deliberate, and apparently enthusiastic, and which involved conduct of particular concern given his history—were a significant breach of the court's trust.  The district court could reasonably conclude that a sentence within the Guidelines range of 8–14 months was inadequate to sanction that breach, deter future violations, and protect the public, especially considering that Padilla-Rivera's earlier 14-month revocation sentence had not been sufficient to induce compliance with the conditions of his supervised release for even one day.

Under the circumstances, we are not left with a "definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  *Irey*, 612 F.3d at 1190 (citation omitted).  We therefore affirm.

**AFFIRMED.**