[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 20-12760, 20-14435
Non-Argument Calendar

_____

D.C. Docket No. 6:19-cr-00220-CEM-GJK-1


UNITED STATES OF AMERICA,

                                                            Plaintiff-Appellee,

versus

JAMES GROOVER,

                                                            Defendant-Appellant.


_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(July 29, 2021)

Before WILSON, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

In this consolidated appeal, James Groover challenges the district court's imposition of a ban on his unapproved internet and computer usage and special financial conditions as part of his supervised release after he was convicted of transporting child pornography. He also challenges the district court's order requiring him to pay victim restitution. After careful consideration, we affirm.

## I.

In 2020, Groover pled guilty without a plea agreement to one count of knowingly transporting child pornography. Groover was arrested after the government found thousands of images and videos of child pornography on his electronic devices upon his return from a three-day cruise in the Bahamas. The majority of the images and videos depicted prepubescent children, including infants and toddlers, and some showed violent abuse of children. The government also found a shortcut to a web-based document on Groover's computer called "Pedo Play Ground" which purported to teach the reader "how to have sex with little girls . . . safely." Groover obtained all these files on the internet, some of it from the dark web.

Groover's presentence investigation report ("PSR") indicated that he had a number of previous convictions, including a 2006 conviction in Canada for possession of child pornography which he also accessed via computer. Groover

was sentenced to fourteen days' imprisonment and three years of probation for that offense and he violated the conditions of that probation in late 2006.

Groover's PSR also indicated that certain special conditions may be warranted, including financial monitoring and a prohibition on possessing or using a computer without prior written approval of the probation officer. The probation office explained that the financial monitoring is meant to "allow more effective monitoring of the defendant's conduct and aid in detecting purchases of devices capable of connecting to the internet." In other words, the financial monitoring is designed to help enforce the computer use restriction. Finally, the PSR pointed out that victim restitution would be mandatory in this case and that the creation of the material that Groover possessed "undoubtedly inflicted harm [on] the children who endured the sexual assaults depicted in the images and videos."

At the sentencing hearing, Groover claimed that he had accidentally accessed child pornography on the dark web while doing biblical research as part of his studies for his doctorate in theology. The district court did not find this statement credible. The district court pointed out that Groover had previously been convicted of possessing child pornography, and that the enormous volume and particularly disturbing nature of the child pornography that formed the basis of his instant conviction and the fact that he could not go on a three-day cruise without

3

access to this material belied his statement that he had accidentally stumbled upon the child pornography.

Groover objected to both the financial monitoring and the computer use restriction conditions. He argued that using monitoring software on his devices would be a less restrictive means of ensuring that he did not access child pornography in the future. He objected to the financial conditions on the grounds that his offense was not financial in nature.

At the sentencing hearing, Groover also conceded that he owed restitution to the abuse victims of whom he possessed images and video recordings. He objected to the amount of restitution the government proposed and encouraged the district court to impose an amount in the "hundreds" of dollars rather than the thousands.

The district court overruled Groover's objections and sentenced him to 188 months' imprisonment to be followed by 10 years' supervised release, and included the special computer use restriction and financial conditions. Specifically, Groover would be subject to two forms of financial monitoring: (1) prohibiting Groover from opening new lines of credit or taking on debt to make major purchases without prior approval from probation; and (2) requiring Groover to provide his probation officer access to any requested financial information. And he would not be permitted to use or possess any computer or device capable of

connecting to the internet without prior written approval of the probation officer. The district court explained that the financial conditions would help the government monitor if and when Groover obtained devices that could connect to the internet. Of course, monitoring software only works to the extent the government knows about the devices that Groover has and the financial monitoring ensures Groover cannot obtain such a device without the government's knowledge. The district court further explained that the computer use restriction was justified based on Groover's prior child pornography conviction and the fact that he violated the conditions of probation for that offense. The specifics of Groover's case, including: the volume and nature of the child pornography he possessed; the disturbing "Pedo Play Ground" manual which suggested he had intentions beyond viewing child pornography; the fact that he used the dark web to access child pornography (which is extremely difficult to monitor); and his disingenuous statement at his sentencing hearing that he merely stumbled onto the dark web, also supported a need to strictly limit Groover's computer access to usage approved by his probation officer.

At the sentencing hearing, the district court also stated that the financial monitoring conditions were "standard language," and the government said that this type of monitoring was "typically recommend[ed]" in child pornography cases.

5

The written judgment included the special financial and computer use conditions in a section separate and apart from the standard conditions.

Following the sentencing hearing, the district court held a hearing about restitution. The government presented evidence that they had identified two of the victims depicted in the materials Groover possessed, Pia and Andy,[1] both of whom made restitution claims. Pia was four years old at the time that she was abused and photographed. Still a minor,[2] Pia now suffers from depression, anxiety, stress disorder, educational difficulties, and suicidal ideation. A psychological evaluation determined that the lifetime costs of her care and treatment are between $286,000 and $323,000. The abuse depicted in the eight images Groover had of Pia was extreme, but because Groover did not produce or distribute the images, the government proposed that a restitution order of $5,000 was appropriate.

Andy was sexually abused for several years starting from the time he was six years old. Andy now suffers from depression, anxiety, difficulties in school, and substance abuse. The costs of his continued treatment are estimated at $267,038 and his lost future income at $1,854,925. The videos of Andy's prolonged abuse are some of the most widely distributed pieces of child pornography on the

---

[1] 'Pia' and 'Andy' are pseudonyms.

[2] Because she is still a minor, Pia's future lost income could not be quantified at the time she made the restitution claim.

internet. Groover transported two images of Andy which again depicted extreme sexual abuse of a young child. However, again in recognition of the fact that Groover neither produced nor distributed the images, the government requested only the mandatory minimum $3,000 restitution award.

Groover argued that the requested restitution was too high in light of the limited role he played in Andy and Pia's losses. Groover offered evidence showing that of the images and videos of Pia and Andy he possessed, only one video of Andy had been opened for a "maximum of 26 seconds," and no evidence that any of the other materials depicting these two victims had been opened. He also suggested that the government failed to prove the identity of the victims, but did not lodge an objection on that ground nor did he identify any discovery he did not receive.

Pursuant to 18 U.S.C. § 2259, the district court ordered Groover to pay $5,000 in restitution to Pia and $3,000 to Andy. The district court explained that, as to Pia, the restitution order was justified by the number of images Groover possessed of her and the "compounding effect" his possession had on the harm she suffered. As to Andy, the district court stated that because the images of his abuse are so widespread, Groover's role in causing the harm he suffered was reduced, which explained the lower restitution order.

Groover timely appealed both the supervised release sentence and the restitution order. This Court consolidated Groover's appeals of his sentence and the restitution order. On appeal, Groover raises two challenges to the conditions of his supervised release and two challenges to the restitution order. We begin with the challenges to the conditions of his supervised release before addressing the challenges to his restitution order.

## II.

Groover first argues that the district court erred by imposing a special condition prohibiting him from using or owning a computer without prior written approval from his probation officer. We review the imposition of a special condition of supervised release for an abuse of discretion. United States v. Taylor, 338 F.3d 1280, 1283 (11th Cir. 2003) (per curiam). A district court abuses its discretion when it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. United States v. Khan, 794 F.3d 1288, 1293 (11th Cir. 2015). A finding is clearly erroneous when we are "left with a definite and firm conviction that a mistake has been committed." United States v. Almedina, 686 F.3d 1312, 1315 (11th Cir. 2012) (quotation marks omitted). Generally, we do not consider evidence not in the record. United States v. Trader, 981 F.3d 961, 969 (11th Cir. 2020).

When imposing a special condition, the district court must consider whether it: "(1) is reasonably related to the [18 U.S.C.] § 3553(a) factors; (2) involves no greater deprivation of liberty than is reasonably necessary to serve the purposes of punishment specified in § 3553(a)(2); and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission." United States v. Carpenter, 803 F.3d 1224, 1238 (11th Cir. 2015) (quotation marks omitted and alteration adopted). The § 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to afford adequate deterrence to criminal conduct, and the need to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1), (a)(2)(B)–(C). The United States Sentencing Guidelines recommend a computer use restriction for defendants who commit sex offenses by using a computer. USSG § 5D1.3(d)(7)(B); id. § 5D1.2 cmt. n.1(A)(ii) (defining sex offense).

This Court has "uniformly upheld conditions prohibiting defendants convicted of sex offenses from accessing a computer or the Internet for the duration of their supervised release." Carpenter, 803 F.3d at 1239. We clarified that such a restriction is not overly broad when the defendant is permitted to use the internet for valid purposes after obtaining prior approval from his probation officer. United States v. Zinn, 321 F.3d 1084, 1093 (11th Cir. 2003). And we have noted that this special restriction is "undeniably related" to the § 3553(a)

9

factors where the defendant "use[s] the internet as [a] tool" in the underlying offense. Taylor, 338 F.3d at 1285.

Groover relies primarily on two sources to overcome the weight of this Court's precedent approving computer use restrictions for sex offenders. First, he cites statistics demonstrating the ubiquity of the internet in modern life. Second, he cites out-of-circuit precedent that determined that highly restrictive computer and internet use restrictions are impermissible. Groover argues that this Court's precedent is simply outdated given the increasingly important role that the internet plays in society. He says the Supreme Court recognized this in Packingham v. North Carolina, 582 U.S. __, 137 S. Ct. 1730, 1737 (2017) (noting that social media websites are for many "the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge").

There are a few problems with Groover's arguments. First, the statistics about internet usage that he cites are not in the record below and so we cannot properly consider them. See Trader, 981 F.3d at 969. But even if we were to take up Groover's invitation to judicially notice "the indisputable fact that society's reliance on the internet and smart phones has increased over the last two decades," that would not support a determination that the district court abused its discretion. Statistics alone do not displace binding precedent and we cannot say the district

10

court applied an incorrect legal standard when it relied on binding caselaw upholding similar computer use restrictions.  Khan, 794 F.3d at 1293.

Nor did the district court abuse its discretion in determining that the computer use restriction was not a greater deprivation of liberty than was necessary in this case.  Groover is not completely banned from using the internet; he may still access it with prior approval from his probation officer.  And the restriction is reasonably related to the § 3553(a) factors.  First, Groover admitted to accessing child pornography via the dark web which is notoriously difficult to monitor.  Groover also had a previous conviction for possessing child pornography and the circumstances of the present case indicated he could not go three days without having access to child pornography.  These facts go to his criminal history, his characteristics, the nature of the offense, and the need to protect the public, all relevant § 3553(a) factors.  18 U.S.C. § 3553(a)(1), (a)(2)(C).

Groover also challenges the special financial conditions that the district court imposed.  He makes two arguments about these conditions.  First, he says the district court erroneously treated them as standard, not special, conditions and therefore failed to conduct the required analysis.  Second, on the merits, he says the financial conditions are overly restrictive and not related to his offense.

When a defendant raises a challenge to a special condition of supervised release for the first time on appeal, we review that challenge for plain error only.

11

Carpenter, 803 F.3d at 1237. While Groover did raise objections to the financial conditions before the district court, he did not do so on the grounds that it erroneously treated these conditions as standard. We therefore review this argument for plain error. Under plain error review, the defendant must show that: (1) an error occurred, (2) that was plain, and (3) that affected his substantial rights. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).

Even assuming that the district court did erroneously view the financial conditions as standard,[3] Groover cannot show that any error affected his substantial rights because the district court conducted the required analysis for special conditions. See Carpenter, 803 F.3d at 1238. The district court devoted significant time to explaining that the special financial conditions were appropriate in this specific case as a necessary measure to ensure compliance with the computer restriction.

For the same reasons, the district court did not abuse its discretion in imposing the special financial conditions. The financial conditions are related to the § 3553(a) factors because both Groover's child pornography convictions involved use of a computer, and the financial conditions ensure compliance with the use of a computer restriction. See id. at 1238; 18 U.S.C. § 3553(a)(1),

---

[3] And even that proposition is questionable, as the district court referred to the financial conditions as special conditions when it orally imposed Groover's sentence and in the written judgment.

(a)(2)(B)–(C).  Further, the Sentencing Guidelines recommend both of the financial conditions imposed in this case when a defendant is ordered to pay restitution.  USSG § 5D1.3(d)(2), (d)(3).  And while the district court had not yet imposed an order of restitution when it imposed these financial conditions, restitution is mandatory in child pornography cases.  See 18 U.S.C. § 2259(a).  And, for the reasons explained below, we affirm the district court's restitution order.  The district court therefore did not abuse its discretion when it imposed the special financial conditions.

## III.

Groover raises two challenges to the district court's restitution order.  First, he says the district court violated his Fifth and Sixth Amendment rights when it found facts related to the identities of the victims, their losses, and the portion of their losses that Groover proximately caused.  Again here, and as an initial matter, Groover did not raise this argument before the district court and therefore contends that plain error review applies.   "[T]here can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."  United States v. Chau, 426 F.3d 1318, 1322 (11th Cir. 2005) (per curiam) (quotation marks omitted).

In Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), the Supreme Court determined that, "[o]ther than the fact of a prior conviction, any

13

fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S. Ct. at 2362–63.  Groover argues that because the facts related to the identity of Pia and Andy, the harm they experienced, and what amount of that harm Groover's actions proximately caused raised his statutory maximum penalty by requiring him to pay restitution at all, those facts should have been submitted to a jury.

Additionally, Groover argues that the $3,000 statutory mandatory-minimum restitution order is unconstitutional.  He says that under Alleyne v. United States, 570 U.S. 99, 133 S. Ct. 2151 (2013), which requires that "any fact that increases the mandatory minimum . . . must be submitted to the jury," id. at 103, 133 S. Ct. at 2155, any fact that subjected him to the mandatory minimum $3,000 restitution order must have been submitted to a jury and proved beyond a reasonable doubt.

The problem for Groover is that he is not entitled to review of his Alleyne and Apprendi arguments, because he invited any error the district court committed in ordering restitution.  The invited error doctrine precludes review of any error that the defendant encouraged the district court to make.  Carpenter, 803 F.3d at 1236.  We have held that where a defendant "expressly acknowledge[s]" that the district court could impose a particular form of punishment, the invited error doctrine precludes review of the defendant's challenge to the district court's

14

imposition of that punishment. United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006) (per curiam). Groover twice acknowledged that he owed restitution in this case. First, at his sentencing hearing, he waived his personal appearance at the restitution hearing and explicitly stated that he "agrees that he owes restitution." And at the restitution hearing, he asked the district court to impose a restitution order, just that it be "in the hundreds, not the thousands" of dollars, on the ground that the number of images he possessed of Pia and Andy and the documented time viewing the images show lowered culpability. Because Groover never raised an Apprendi or Alleyne challenge but instead agreed to pay restitution, we cannot review his challenge to the restitution order on this basis. See id.

Finally, Groover argues that the district court erred when it failed to disaggregate the losses that he personally caused the victims from the losses caused by the initial abuse they suffered. Groover concedes that plain error review applies to this argument because he did not raise it below. He also concedes that this Court's precedent forecloses his argument, as we explicitly rejected a disaggregation requirement in United States v. Rothenberg, 923 F.3d 1309, 1333 (11th Cir. 2019) ("[W]e conclude that a district court is not required to determine, calculate, or disaggregate the specific amount of loss caused by the original abuser-creator or distributor of child pornography before it can decide the amount of the victim's losses caused by the later defendant who possesses and views the

15

images."). Groover says he can prevail even on plain error review because the circuit split that exists over this issue has widened since we decided Rothenberg. But to establish plain error, Groover would have to point to binding precedent from this Court or the Supreme Court resolving the issue in his favor. Chau, 426 F.3d at 1322. Not only has Groover failed to do so, but there is precedent directly on point that contradicts his position. See Rothenberg, 923 F.3d at 1333. Therefore, we find no plain error here.

**AFFIRMED.**

16