[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13045
Non-Argument Calendar

_____

D.C. Docket No. 1:12-tp-20072-JAL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REY JOMARRON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 9, 2016)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Rey Jomarron appeals his 24-month sentence, imposed above the advisory Sentencing Guidelines range and at the statutory maximum, following revocation of his supervised release. On appeal, Jomarron argues that his sentence was procedurally and substantively unreasonable. After careful consideration, we affirm.

## I. BACKGROUND

Jomarron pled guilty to possession of counterfeit credit cards with intent to defraud, in violation of 18 U.S.C. §§ 1029(a)(3), (2). He was sentenced to two years' imprisonment followed by three years of supervised release.

Some time after his release, Jomarron was arrested in Pembroke Pines, Florida, when police received a call alerting them to a potential fraudulent transaction at a local Best Buy store. After receiving a description of the suspect, Officer Keith Forseth observed an individual, Jomarron, who matched the description walking through the parking lot of the Best Buy and carrying a Best Buy shopping bag. Forseth identified himself and directed Jomarron to sit on a curb in the parking lot. Shortly after taking a seat, Jomarron dropped his bag and attempted to flee. Forseth managed to apprehend Jomarron. He then searched

2

Jomarron and found a laptop in Jomarron's shopping bag, a receipt for the laptop, and two debit cards in Jomarron's name.

Another officer, Thomas Moran, determined that the debit cards were counterfeit after using a magnetic strip card reader to decipher the information encoded on the cards' magnetic strips. The reader revealed that the cards were linked to Bank of America accounts but had the appearance of NetSpend Visa credit cards. Jomarron was not an authorized user on either account even though his name appeared on both cards. Moran was also able to determine that Jomarron had used one of the counterfeit cards to pay for the new laptop in his possession.

Police arrested Jomarron and subsequently released him after he posted bail. After being released, Jomarron never notified his probation officer that he had been arrested. Instead, Jomarron fled to Panama. United States Marshalls eventually apprehended Jomarron when he attempted to reenter the United States at the Texas border.

The probation department filed a superseding petition alleging that Jomarron had violated the terms of his release by committing seven offenses: (1) illegal use of a credit card, (2) forgery or alteration of a credit card, (3) grand theft, (4) resisting an officer, (5) failing to notify probation within 72 hours of being arrested or questioned by police, (6) failing to notify probation of a change in residence, and (7) leaving the judicial district without prior permission from probation. The

3

probation department recommended that the district court revoke Jomarron's supervised release and calculated a Sentencing Guidelines range of four to 10 months' imprisonment.  The statutory maximum sentence was 24 months.

At the revocation hearing, Jomarron admitted to violations five through seven of the superseding petition but did not admit to violations one through four. After hearing witness testimony and argument from counsel, the district court found Jomarron guilty of violations one through four.  The court dismissed violations five through seven on the government's motion.

At sentencing, Jomarron asked for a sentence at the high end of the guidelines range.  He explained that he had struggled to find work after being released.  He further described how he had fled to Panama because he was concerned about how his mother, who was very ill at the time, would be affected by his incarceration.  He also claimed that his co-conspirators to the credit card scheme had threatened to shoot him if he did not leave the country.

The district court ultimately revoked Jomarron's supervised release and sentenced him to 24 months' imprisonment, the statutory maximum.  The court noted that it had "considered the statements of the parties, the testimony . . . and the information contained in [Jomarron's] violation report."  Revocation Hr'g Tr. at 31 (Doc. 21).[1]  The court further explained that a sentence at the statutory

---

[1] "Doc." refers to the docket entry in the district court record in this case.

4

maximum was appropriate because Jomarron had "previously [been] convicted of possession of counterfeit access devices" and he had "now [been] found to have violated his supervised release by the very same conduct for which he was [previously] sentenced." *Id.* at 32. Jomarron objected to the procedural and substantive reasonableness of the imposed sentence. This is his appeal.

## II. DISCUSSION

"Pursuant to 18 U.S.C. § 3583(e), upon finding that [a] defendant violated a condition of supervised release, a district court may revoke the term of supervised release and impose a term of imprisonment" after considering certain factors set forth in 18 U.S.C. § 3553(a). *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to afford adequate deterrence to criminal conduct, the need to protect the public from further crimes, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. 18 U.S.C. § 3583(e), 3553(a). When the district court determines that a variance from the guidelines range is appropriate, it must then consider the extent of the variance and ensure that there is a sufficiently compelling justification for it. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

5

We review a sentence imposed upon the revocation of supervised release for reasonableness. *United States v. Sweeting*, 437 F.3d 1105, 1106-07 (11th Cir. 2006). In doing so, we review for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). This standard reflects the due deference we give to district courts because they have an "institutional advantage in making sentencing determinations." *United States v. Alfaro-Moncada*, 607 F.3d 720, 735 (11th Cir. 2010) (internal quotation marks omitted). Thus, "[w]e may vacate a sentence only if we are left with the definite and firm conviction that the district court committed a clear error of judgment." *Id.* (internal quotation marks omitted). We conduct a *de novo* review, however, of the sufficiency of a district court's explanation of a defendant's sentence. *United States v. Bonilla*, 463 F.3d 1176, 1181 (11th Cir. 2006).

Reviewing the reasonableness of a sentence is a two-step process. "We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances." *Tome*, 611 F.3d at 1378. The party challenging the sentence bears the burden of showing it is unreasonable in the light of the record and the relevant factors. *Id.* Jomarron contends that his sentence is both procedurally and substantively unreasonable. We address these arguments in turn.

6

**A. Procedural Reasonableness**

"A sentence may be procedurally unreasonable if the district court improperly calculates the Guidelines range, treats the Guidelines as mandatory rather than advisory, fails to consider the appropriate statutory factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir. 2008). Jomarron contends that the district court committed procedural error by failing to explain adequately the basis of his sentence. Jomarron notes, in particular, that the court never explicitly stated it had considered the relevant policy statements of the Sentencing Guidelines.

Jomarron is correct that a district court must explain its reasons for imposing a particular sentence. *Rita v. United States*, 551 U.S. 338, 356 (2007); 18 U.S.C. § 3553(c). This explanation, however, need not be exhaustive. Rather, an acknowledgement by the court that it has considered the defendant's arguments and the factors listed in § 3553(a) will satisfy this requirement. *United States v. Dorman*, 488 F.3d 936, 938 (11th Cir. 2007). Moreover, "[t]he district court need not state on the record that it has explicitly considered each factor and need not discuss each factor." *Id.* We typically conclude that a district court failed to adequately explain a sentencing decision only "when the record contain[s] no evidence that the district court had considered, or the defendant had even raised,

7

the applicability of any of the § 3553(a) factors." *United States v. Smith*, 568 F.3d 923, 928 (11th Cir. 2009).

We are satisfied with the sufficiency of the district court's explanation of Jomarron's sentence. The court heard and considered Jomarron's arguments for why he should receive a sentence within the guidelines range. Jomarron's counsel explained that Jomarron had difficulty finding work after being released and had fled the country after his arrest because he was threatened and because he was concerned his imprisonment might adversely affect his ill mother. Jomarron expressed remorse and apologized for his conduct.

Apart from considering Jomarron's and his counsel's presentations, the court noted that Jomarron had "violated his supervised release by the very same conduct for which he was [previously] sentenced." Revocation Hr'g Tr. at 32 (Doc. 21). The court also stated that it had considered Jomarron's "criminal history" and the "statements of the parties, the testimony . . . and the information contained in [Jomarron's] violation report" in deciding the appropriate sentence. *Id.* at 31-32.

Although the district court never explicitly referenced the § 3553(a) factors, the record clearly demonstrates that the court weighed them, both in considering Jomarron's arguments and in deciding that a variance was appropriate. Jomarron's protestations to the contrary notwithstanding, the court was under no obligation to state on the record that it had considered all of the relevant § 3553(a) factors

(including the policy statements of the Sentencing Commission) when imposing its sentence. *See Dorman*, 488 F.3d at 938. The statements of the parties, the testimony of Officers Forseth and Moran, and Jomarron's violation report, all of which the court considered, concerned the nature and circumstances of Jomarron's offense. Similarly, the court clearly weighed Jomarron's history and characteristics when it based Jomarron's sentence on his "criminal history." *Id.* at 32. Finally, the fact that Jomarron had violated his supervised release by engaging in the same conduct for which he was previously convicted spoke to Jomarron's propensity for engaging in criminal conduct, and thus whether there was a need to deter future criminal conduct and protect the public from him. Therefore, although the district court "fail[ed] to articulate specifically the applicability . . . of each of the section 3553(a) factors, . . . the record demonstrates that the pertinent factors were taken into account." *Smith*, 568 F.3d at 927. That is all the law requires.

**B.     Substantive Reasonableness**

Having determined that the district court's sentencing decision was procedurally sound, we next consider the substantive reasonableness of Jomarron's sentence. A district court abuses its discretion and imposes a substantively unreasonable sentence if it "(1) fails to afford consideration to relevant [§ 3553(a)] factors that were due significant weight, (2) gives significant weight to an improper

or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (internal quotation marks omitted). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court . . . ." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (internal quotation marks omitted). In imposing an upward variance, the district court may consider any information relevant to a defendant's background, character, and conduct. *See Tome*, 611 F.3d at 1379. "[I]t is only the rare sentence that will be substantively unreasonable." *Rosales-Bruno*, 789 F.3d at 1256 (internal quotation marks omitted).

Jomarron contends that his sentence of 24 months' imprisonment was unduly harsh for two reasons. First, he argues that the district court failed to consider relevant § 3553(a) factors. Second, he argues that a sentence within the guidelines range would have sufficiently accounted for his violation of supervised release. We reject both arguments.

Jomarron argues that the district court failed to properly consider the § 3553(a) factors, but, as we have already discussed, the court's explanation of Jomarron's sentence demonstrated that it considered and weighed them. Notably, a district court "abuses its considerable discretion and imposes a substantively unreasonable sentence only when it . . . fails to afford consideration to

10

*relevant factors that were due significant weight.*" *Id.* (emphasis added).  Even if Jomarron had adequately demonstrated that the district court failed to consider all of the § 3553(a) factors—and he has not—he failed to show that any factors disregarded by the court were relevant and due significant weight.  Jomarron's argument therefore fails to demonstrate that his sentence is substantively unreasonable.

Jomarron's second argument, that a sentence within the guidelines range would have been sufficient, fares no better than his first argument.  In order to prevail on his appeal, Jomarron has "the burden of showing that [his] sentence is unreasonable in light of the entire record." *Id.*  In other words, he must show that the sentence he received is unreasonable, not simply that a different sentence would have served as an adequate punishment.  Although the sentencing court must ensure that there is a sufficiently compelling justification for any variance from the guidelines range, *Tome*, 611 F.3d at 1378, a reviewing court may not presume a sentence is unreasonable simply because it is outside the guidelines range.  *Gall*, 552 U.S. at 51.  Indeed, the Supreme Court has "forbidden us from requiring extraordinary circumstances to justify" a sentence outside the guidelines range.  *Rosales-Bruno*, 789 F.3d at 1256 (internal quotation marks omitted).

Ultimately, despite the fact that Jomarron's sentence represented a significant variance from the guidelines range, we cannot conclude that the district

court committed a clear error of judgment in imposing it.  Jomarron originally pled guilty to possession of counterfeit credit cards with intent to defraud.  After serving his prison sentence, he was released only to be arrested again for the same conduct.  And instead of taking accountability for his conduct, he fled police not once, but twice:  he attempted to flee after he was initially identified by a police officer in the Best Buy parking lot and he fled the country after he was released on bail.  The district court acted within the bounds of its discretion in deciding that this conduct warranted a significant upward variance.   "[T]he sentence was within the outer bounds of the district court's substantial sentencing discretion—in the ballpark of permissible outcomes."  *Id.* at 1257 (internal quotation marks omitted).

### III. CONCLUSION

We conclude that Jomarron has failed to demonstrate that his sentence is procedurally or substantively unreasonable.  We therefore affirm the sentence the district court imposed.

**AFFIRMED.**

12