[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13977

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUSTIN REED,
a.k.a. Justin Scott Reed,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:21-cr-00001-CDL-MSH-1

_____

Before ROSENBAUM, JILL PRYOR, and LAGOA, Circuit Judges.

PER CURIAM:

Justin Reed appeals his sentence of 360 months' imprisonment for one count of sexual abuse and argues that the district court sentenced him to a substantively unreasonable term of imprisonment because it was nearly three times the applicable guideline range.  For the foregoing reasons, we affirm.

I.

In 2021, a federal grand jury charged Reed with one count of aggravated sexual abuse, in violation of 18 U.S.C. § 2241(c). Reed later agreed to plead guilty to sexual abuse, in violation of 18 U.S.C. § 2242(1), pursuant to a written plea agreement.  The agreement provided, among other things, that Reed faced a maximum statutory sentence of life imprisonment and that "the Court has the authority under certain circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines."  Following a hearing, at which the district court went over the plea agreement, the district court accepted Reed's plea and found him guilty.

Reed filed a sentencing memorandum requesting a reasonable sentence and providing information on his personal background.  This memorandum detailed Reed's strained relationship with his father, his previous military service, and his relationship history.  It stated that Reed did not identify as a victim of sexual

abuse but detailed his sexual experiences with a slightly older neighbor from his childhood. It also detailed his pornography addiction, which he claimed started at the age of nine, and his past participation in Sex Addicts Anonymous. The memorandum requested a 235-month sentence, which, it argued, would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

Reed's presentence investigation report ("PSI") described the offense conduct as follows. On April 5, 2020, Reed's wife discovered sexually explicit online messages between her daughter, Jane Doe, and friends. The wife questioned her daughter about the messages, and Doe told her mother that she had been assaulted by Reed multiple times. Doe stated that Reed had touched her sexually while her mother was out of the home. She also reported that Reed put his mouth and fingers on her, pointing to her chest and vagina, and penetrated her, putting his "thing" in her "thing." When the wife asked if she meant Reed's penis, Doe confirmed that she did. Doe later stated that this last occurred less than a month prior, on March 16, 2020.

The wife confronted her husband, who replied, "[i]t has been happening in this house." Following this admission, the wife told him to leave and contacted police. Reed later contacted his wife, apologized, and stated that he messed up and needed counseling. He also asked if he should go meet with police. Reed called himself a disgusting person who needed to be locked up and stated, "[i]t should have never happened again after the first time." Reed

also texted his mother, effectively stating that he would turn himself in, that he was going to jail for a long time, that life would never be the same, that he would be kicked out of the military, and that he would lose his wife and kids.

The next day, Doe was forensically interviewed at the Children's Tree House Child Advocacy Center in Columbus. Doe stated that she was nine years old when Reed first touched her inappropriately, while the family lived in Hawaii. She explained that Reed had touched her vagina twice during that time, once over her clothing and once under. She stated that her mother caught him leaving her bedroom after the second occasion and that the two had argued about it. She explained that once her family moved to Alabama and her mother obtained night-time employment, Reed began touching her each time her mother went to work. She also stated that Reed began placing his penis on her vagina, above her clothing.

Doe also explained that after the family moved into base housing at Fort Benning, Reed continued touching her when her mother was at work, and that he began removing his clothing and touching her vagina with his hand, mouth, and penis. She stated that Reed would lie on top of her with vaginal penetration, force her to kiss him on the mouth, and that each incident occurred in her bedroom. She did not recall him wearing anything on his penis, anything coming from his penis, or him using a towel or rag during the incidents. She stated that Reed would stop if one of her younger siblings entered the room, denied that he showed her any

pornographic material, and denied him recording the incidents. She reiterated that the last assault occurred on March 16, 2020. Doe also explained that she told her sister and three friends about the abuse—all four girls later confirmed that they were aware of Reed's actions. Doe also stated that, during a camping trip in Alabama, she awoke to Reed digitally penetrating her vagina.[1]

During subsequent interviews, the wife explained that she did not believe that Reed had touched any of her other children in an inappropriate manner, which was supported by Tree House personnel interviews with her other children. She stated that, in February 2020, she had a "good touch, bad touch" conversation with Doe and her older sister and asked if there was anything they wanted to tell her. The wife recalled that Doe appeared as if she wanted to speak, but both girls said nothing. The wife also stated that her husband had a serious pornography addiction, for which he had received treatment, and that she had caught him in sexual conversations with women on chat sites. She described awakening to a non-consensual vaginal penetration like that described by her daughter. She explained that she was dependent on Reed for rides to and from work and questioned, in hindsight, whether he used this to control her movements and ensure opportunities to abuse her daughter.

---

[1] Reed is charged by the State of Alabama for inappropriately touching another minor (a non-family member) during that same trip.

During a later physical exam, medical staff discovered that Doe had a complete hymenal transection, which is evidence of prior blunt force penetration consistent with her disclosures. Doe denied engaging in other sexual conduct.

The PSI initially calculated a base offense level of 30 based on the conviction under 18 U.S.C. 2242(1), according to U.S.S.G. § 2A3.1(a)(2). It added 4 points under U.S.S.G. § 2A3.1(b)(2)(A) because Doe had not yet attained the age of 12. It added 2 points under U.S.S.G. § 2A3.1(b)(3)(A) because Doe was in the custody, care, or supervisory control of Reed. Pursuant to U.S.S.G. §§ 3El.l(a) and (b), it subtracted 2 points for acceptance of responsibility and 1 point for entering his guilty plea in a timely manner. Altogether, this yielded a total offense level of 33.

The PSI noted that Reed had no prior criminal convictions, which resulted in a criminal history category of I. The report noted that his statutory maximum term was life in prison. With a total offense level of 33, and a criminal history category of I, the report found that his guideline imprisonment range was 135 to 168 months. Neither party objected to the PSI.

At sentencing, Reed and his counsel spoke in court, highlighting that he had recently begun treatment for mental health issues, found a relationship with God, and taken responsibility for his actions. Counsel emphasized the facts contained in the sentencing memorandum, particularly highlighting Reed's military career and lack of criminal record. The wife argued for the maximum sentence and spoke of the affect Reed's actions had on her family. She

stated that, due to Reed's abuse, Doe attempted suicide, had multiple outbursts, attended several short and long-term care facilities, began therapy, and started taking daily medication.  She spoke of the toll Reed's abuse had on her other children and stated that four out of six of them were now in therapy and on medication.  She shared that her own stepfather had abused her and questioned how she did not see the signs sooner.

The district court asked for clarification from the government on its decision to proceed with the charge of sexual abuse, rather than the original indictment for aggravated sexual abuse. The district court asked whether Reed had admitted to all the elements of aggravated sexual abuse—which would have had a statutory minimum sentence of 360 months—and questioned whether the government allowed him to plead to the lesser offense to avoid trial.  The government answered in the affirmative and stated that it wanted to avoid putting Doe on the witness stand.  The district court then asked about the statutory sentencing range for the lesser offense of sexual abuse.

The district court stated that there are few cases more serious and damaging than those like Reed's.  It acknowledged that Reed likely had mental health issues but emphasized that he was still responsible for harming Doe and her family and that no mitigating factor took away from that fact.  The district court emphasized that Reed's actions permanently affected Doe, that he abused the trust of a young child who depended on him, and there was no excuse for Reed's behavior.  The court then stated that it had

considered the advisory sentencing range, the 18 U.S.C. § 3553(a) factors, the nature, and circumstances of the offense—including the age of the victim and the repeated instances of abuse. The court also emphasized the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to adequately deter future criminal conduct, and to protect the public from Reed's further crimes. The district court further stated that it had considered the government's sentencing recommendation but found it to be inadequate and not a sufficient upward variance.

The district court then varied upward and sentenced Reed to 360 months' imprisonment, followed by 20 years of supervised release. Reed objected to the substantive unreasonableness of the sentence but acknowledged that he was on notice, via the written plea agreement, that there could be an upward variance in his case. Following entry of a final judgment, Reed appealed.

## II.

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). The party challenging the sentence bears the burden of showing that the sentence is unreasonable considering the record, the factors listed in 18 U.S.C. § 3553(a), and the substantial deference afforded sentencing courts. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

We examine whether a sentence is substantively reasonable considering the totality of the circumstances. *Gall*, 552 U.S. at 51. The district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. *See* 18 U.S.C. § 3553(a)(2). Further, the district court should try to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *Id.* § 3553(a)(6).

The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). The district court may consider any information relevant to a defendant's background, character, and conduct in imposing an upward variance. *United States v. Tome*, 611 F.3d 1371, 1379 (11th Cir. 2007). We give due deference to the district court's decision that the § 3553(a) factors, as a whole, justify the extent of the variance. *Gall*, 552 U.S. at 59–60.

A court can abuse its discretion when it (1) fails to consider relevant factors that were due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by balancing the proper factors unreasonably. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). When a district court imposes an upward variance based on the

§ 3553(a) factors, it must have a justification compelling enough to support the degree of the variance. *United States v. Early*, 686 F.3d 1219, 1221 (11th Cir. 2012). But a "rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence" is not appropriate. *Gall*, 552 U.S. at 47. While an appellate court may take the degree of variance into account, no rule requires "extraordinary" circumstances to justify a sentence outside the guidelines range. *Id.*

A sentence could be unreasonable if the district court unjustifiably relied on a single factor. *United States v. Kuhlman*, 711 F.3d 1321, 1327 (11th Cir. 2013). But significant reliance on a single factor does not necessarily render a sentence unreasonable. *Id.* Additionally, a sentence outside the guidelines carries no presumption of unreasonableness. *Irizarry v. United States*, 553 U.S. 708, 714 (2008). Finally, a sentence imposed well below the statutory maximum penalty is another indicator of reasonableness. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (holding that the sentence was reasonable in part because it was well below the statutory maximum).

We vacate on substantive reasonableness grounds only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case. *Irey*, 612 F.3d at 1190.

Here, we conclude that the district court did not abuse its discretion in finding that the § 3553(a) factors, as a whole, justify the upward variance. *Gall*, 552 U.S. at 59-60. The district court explicitly stated that it considered all the § 3553(a) factors in sentencing Reed. In particular, the district court found that the egregiousness of his offense conduct outweighed any mitigating evidence presented. The district court emphasized the need for the sentence to reflect the seriousness of the offense—highlighting the victim's age and the repeated abuse—to promote respect for the law, to provide just punishment, to adequately deter future criminal conduct, and to protect the public from Reed's further crimes. The district court was within its discretion to find that the § 3553(a) factors, as a whole, warranted the upward variance. *Gall*, 552 U.S. at 59-60.

Moreover, Reed's plea agreement informed him that the district court was not required to impose a sentence within the advisory guidelines, and that the statutory maximum for the sentence was life imprisonment. Thus, Reed was aware of the possibility that the court might vary outside the guidelines. Further, the district court's sentence was still below the statutory maximum of life imprisonment, which is another indicator of reasonableness. *See Gonzalez*, 550 F.3d at 1324.

Because Reed failed to show that his 360-month sentence is substantively unreasonable, considering the record and the § 3553(a) factors, *Tome*, 611 F.3d at 1378, we conclude that Reed's sentence is substantively reasonable and affirm his sentence.

12                    Opinion of the Court                    21-13977

AFFIRMED.