[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12315

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

REGINALD REYNALD ROBERTS,
a.k.a. Rudy,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00153-KKM-AAS-1

_____

Before JILL PRYOR, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

After appellant Reginald Roberts pleaded guilty to one count of conspiracy to commit Hobbs Act robbery, three counts of Hobbs Act robbery, and three counts of brandishing a firearm during a crime of violence, the district court imposed a sentence of 240 months for the various Hobbs Act offenses to be followed by three consecutive 84-month sentences for the firearm offenses, yielding a total sentence of 492 months. On appeal, Roberts argues that his sentence is substantively unreasonable. After careful consideration, we affirm.

## I.

Over a three-month period from January through March 2021, Roberts, together with others, conspired to commit and, in fact, committed a series of armed robberies. In the robberies, Roberts and his co-conspirators forced their way into victims' homes and held them at gunpoint. During some of the robberies, they pistol-whipped victims while demanding money and narcotics. Roberts admitted that they targeted victims who were drug dealers and thus likely to have narcotics and proceeds from drug sales in their homes.

The government charged Roberts with one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); four counts of Hobbs Act robbery, in violation of

18 U.S.C. § 1951(a); and four counts of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).

Roberts agreed to plead guilty to conspiracy to commit Hobbs Act robbery, three counts of Hobbs Act robbery, and three counts of brandishing a firearm during a crime of violence. He admitted to participating in robberies on January 2, 2021; January 14, 2021; and February 26, 2021. The government agreed to dismiss the remaining charges against Roberts, not to bring further charges against him, to recommend a three-level reduction for acceptance of responsibility, and to recommend a sentence within the applicable range under the Sentencing Guidelines. The district court accepted Roberts's guilty plea.

Before sentencing, a probation officer prepared a draft presentence investigation report ("PSR"). The PSR contained additional details about the robberies to which Roberts pleaded guilty.

The PSR also included information about Roberts's participation in several other crimes. It reported that on January 13, 2021, Roberts participated in an attempted home robbery. During the attempted robbery, at least one gunshot was fired into the home. Roberts later told law enforcement he remained in the car during the attempted robbery. But a victim identified Roberts as carrying a handgun outside the vehicle.

The PSR also described two incidents that occurred on January 18, 2021. In the first incident, a victim reported a burglary in which four men brandishing firearms forced their way into a home. The victim reported that the men wore face coverings and dark

clothing and drove a red Jeep Compass. Surveillance video showed Roberts at the scene. And cell site data placed him in the vicinity of the robbery.

Later that day, a different victim reported an aggravated assault. The victim reported seeing three suspicious men near a family member's home. As the men departed the area in a red Jeep, one pointed an AR-15 rifle at the victim. Again, cell site data placed Roberts in the area. Law enforcement determined that the same red Jeep Compass was involved in both incidents and that it was a rental car that Roberts had borrowed.

The PSR also described an incident that occurred on February 26, 2021, which was the same day as one of the robberies to which Roberts pleaded guilty. Law enforcement officers received reports of a residential burglary and that one victim had been shot and another had been pistol-whipped. The house belonged to a known drug dealer who used it for an illegal gambling operation. Video surveillance showed that the robbers arrived in a dark SUV and a white Chevrolet and that both vehicles were equipped with flashing lights. Several men, including Roberts, exited the vehicles, carrying firearms and wearing face masks and dark clothing. The robbers pointed guns at two victims who were on the front porch and forced them inside the house. The robbers fired at least one round of ammunition before fleeing. Cell site data placed Roberts and his co-conspirators in the robbery's vicinity.

The PSR also detailed Roberts's criminal history. According to the PSR, his lengthy criminal record began when he had a

juvenile adjudication for petit theft at 13 years old. The PSR listed other juvenile adjudications for various crimes including trespass, grand theft, burglary, and resisting arrest. The PSR also reflected that Roberts had adult convictions for various crimes including grand theft of a motor vehicle, attempted burglary of an unoccupied dwelling, and possessing a firearm as a convicted felon. The PSR also noted that Roberts had a pending state criminal charge for murder in the first degree.

Another section of the PSR addressed Roberts's advisory range under the Sentencing Guidelines. For the Hobbs Act offenses, it calculated his total offense level as 27 and his criminal history category as V, which yielded a range of 120 months to 150 months. The PSR also noted that Roberts was subject to three consecutive seven-year terms of imprisonment for the § 924(c) charges.

At the sentencing hearing, the district court adopted the PSR's calculation of the guideline range. It then heard from the parties about an appropriate sentence. The government asked the district court to impose a sentence of 402 months' imprisonment. This requested sentence consisted of 150 months for the Hobbs Act offenses, which was the top end of the applicable guideline range, to be followed by a 21-year consecutive sentence for the firearm offenses. The government emphasized Roberts's escalating criminal conduct, noting that he had gone "from misdemeanor petit theft to grand theft," "from trespass to burglary," "from burglaries to robberies," and "from offenses without firearms to offenses where

he's now carrying and using firearms." Doc. 268 at 8.[1] The government also stated that after each prison sentence, Roberts's conduct had become more violent.

The government also pointed to Roberts's role in the charged crimes, describing him as someone who was "violent," "willing to use force," and "willing to cause harm." *Id.* at 10. It discussed a video from one robbery showing that Roberts pointed a gun at the back of a victim's head and how he was identified as a shooter in another attempted robbery. The government also argued that Roberts pushed his co-conspirators to commit the robberies. And it asked the court to consider that Roberts began to participate in the conspiracy and commit the robberies just four months after being released from prison.

During the sentencing hearing, the court asked the government for more information on Roberts's pending state murder charge. The government explained that the charge arose from a May 2021 incident when a man entered a convenience store and immediately shot the clerk behind the counter. Surveillance video showed that the shooter then moved behind the counter and stole cash. The government stated that Roberts's fingerprints were found next to the cash drawer and that ballistics evidence showed that the firearm used to kill the clerk was also used in one of the attempted robberies Roberts had committed. Roberts did not

---

[1] "Doc." numbers refer to the district court's docket entries.

dispute the government's account of the fingerprint and ballistics evidence.

Roberts's counsel asked the court to award a downward variance or impose a sentence at the low end of the guideline range. She acknowledged that the "nature and circumstances of these offenses . . . were troubling." *Id.* at 16. But she argued that a longer sentence was unnecessary given the lengthy mandatory consecutive sentences Roberts faced for the firearms offenses. As to history and characteristics, she argued that Roberts's earlier criminal convictions were the result of "youth and immaturity." *Id.* at 17. She asked the court not to consider the pending murder charge because Roberts had not yet been convicted of any crime. Roberts and his family members also addressed the court. Roberts apologized for his actions and told the court that he was not a bad person.

After hearing from the parties, the district court weighed the applicable § 3553(a) factors.[2] It considered the nature and

---

[2] Under § 3553(a), a district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

circumstances of the offenses, as well as the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment, deter further criminal conduct, protect the public, and avoid unwarranted sentencing disparities.

The court focused on the nature and circumstances of the offenses. It found that the robberies warranted a "very severe sentence" because they involved "holding firearms, semiautomatic weapons" at victims' heads. *Id.* at 43. The court described this conduct as "violent" and "reprehensible." *Id.*

The court also discussed Roberts's history and characteristics. It found that he had engaged in an escalating pattern of criminal activity. Although Roberts had been incarcerated in the past, the court noted that his continued participation in criminal conduct showed that his previous prison sentences had not deterred him. The court also indicated that it considered Roberts's supportive family but noted that he had demonstrated little remorse when he addressed the court.

The district court then addressed Roberts's pending murder charge. It found that the undisputed facts showed that his "fingerprints were found at the convenience store where the clerk was shot execution style and that a firearm used to commit one of the [attempted] robberies to which [Roberts] admittedly participated . . . was also the one used to kill the store clerk." *Id.* at 44. The court determined that this evidence established by a "preponderance of the evidence" that Roberts was "involved in" the murder of the

convenience store clerk. *Id.* But after making this factual finding, the court added that even without considering Roberts's role in the murder, it would "impose the exact same sentence" based on the "severity of the conduct to which [Roberts] pleaded guilty and admitted the factual basis for." *Id.* at 45.

The court then sentenced Roberts to 492 months' imprisonment. This sentence consisted of 240 months' imprisonment for the various Hobbs Act robbery convictions, plus three consecutive, 84-month terms of imprisonment for the firearm convictions. After the court announced the sentence, Roberts objected, arguing that the upward variance from the applicable guideline range was unreasonable.

This is Roberts's appeal.

## II.

We review the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). Reviewing the reasonableness of a sentence is a two-step process. "We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances." *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). The party challenging the sentence bears the burden of showing it is unreasonable in light of the record and the § 3553(a) factors. *Id.*

### III.

On appeal, Roberts challenges the substantive reasonableness of his sentence. We will reverse a sentence for substantive unreasonableness "only if[] we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted). When a district court imposes an upward variance based on the § 3553(a) factors, it must have a justification compelling enough to support the degree of the variance. *United States v. Early*, 686 F.3d 1219, 1221 (11th Cir. 2012). Importantly, "the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016). In addition, "a sentence imposed well below the statutory maximum penalty indicates reasonableness." *United States v. Woodson*, 30 F.4th 1295, 1308 (11th Cir. 2022) (internal quotation marks omitted).

After considering the facts of this case, we are not left with a definite and firm conviction that the district court committed an error of judgment when it weighed the § 3553(a) factors and imposed a total sentence of 492 months. Indeed, the court's statements at sentencing show that it carefully weighed the applicable § 3553(a) factors including the nature and circumstances of the offenses and Roberts's history and characteristics. Although the district court imposed a substantial upward variance, it offered a compelling justification for its decision.

On appeal, Roberts challenges the weight the district court assigned to certain § 3553(a) factors. But the court had discretion to determine how much weight to assign to each factor. *See Croteau*, 819 F.3d at 1310. And even though Roberts's sentence was lengthy, it was still well below the applicable statutory maximum, which further supports the conclusion that the sentence was reasonable. *See Woodson*, 30 F.4th at 1308.

Roberts nevertheless argues that his sentence was unreasonable because the district court gave too much weight to the pending state murder charge against him. According to Roberts, the court focused on "one consideration"—his role in the murder— "above all others." Appellant's Br. 22. But the record does not support this characterization. At the sentencing, the district court explained that, given the serious nature of the offense, it would have imposed the exact same sentence even without considering Roberts's involvement in the murder. We thus reject Roberts's argument that the district court erred by focusing only on his role in the murder to the exclusion of other relevant factors.

Roberts also suggests that the district court's chosen sentence was unreasonable because it imposed an upward variance after he and the government suggested a sentence within the applicable guideline range. But he cannot prevail on a substantive reasonableness challenge simply by showing that some would view a shorter sentence as reasonable. *See Irey*, 612 F.3d at 1191 ("A district court's sentence need not be the most appropriate one, it need only be a reasonable one."). Instead, Roberts must show that the

sentence imposed by the district court "lies outside the range of reasonable sentences dictated by the facts of the case" and the relevant sentencing factors. *Id.* at 1190 (internal quotation marks omitted). His argument that a lesser sentence would, in the opinion of some, be more appropriate does not suffice.

**AFFIRMED.**