**NOT FOR PUBLICATION**

## In the

## United States Court of Appeals

### For the Eleventh Circuit

_____

No. 25-10902
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DAMON EUGENE HOUSTON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:15-cr-00037-RH-MAF-1
_____

_____

No. 25-10908
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DAMON EUGENE HOUSTON,
  a.k.a. Derek Mullough,
  a.k.a. Derrick Mcullough,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:21-cr-00020-AW-MAF-1

_____

Before JORDAN, BRANCH, and KIDD, Circuit Judges.

PER CURIAM:

Damon Houston appeals the district court's imposition of a 60-month prison sentence after it found Houston violated the conditions of his supervised release from sentences in Houston's 2015 and 2021 criminal cases. Houston argues that the district court's sentence is substantively unreasonable because it imposed consecutive, rather than concurrent, sentences and did not properly weigh the mitigating evidence he offered. We affirm because the district court did not abuse its discretion, and the sentence was substantively reasonable.

## I.      Background

Houston is no stranger to run-ins with the law. In 2015, a grand jury indicted Houston and charged him with three counts of knowingly and intentionally distributing a controlled substance (methamphetamine), one count of carrying a firearm while doing

so, and two counts of knowingly possessing a firearm and ammunition while being a convicted felon. Houston pled guilty to all charges.

The district court sentenced Houston to 84 months' total imprisonment, with three years of supervised release to follow. The supervised release conditions included requirements that Houston "shall not commit another federal, state, or local crime" and "shall not purchase, possess, use, distribute, or administer any controlled substance . . . except as prescribed by a physician."

In 2021, another grand jury indicted Houston and charged him with knowingly escaping from custody by willfully failing to remain within the extended limits of his confinement at a residential reentry center. Houston again pleaded guilty. The district court sentenced him to an additional 12 months' imprisonment to run consecutively with his previous sentence, and to three years of supervised release to run concurrent with the previously imposed term of supervised release. The supervised release conditions again included prohibitions on further crime and unlawful controlled substance possession or use.

Houston began his supervised release term after his release from custody in October 2022. Beginning in March 2023, Houston violated the supervised release conditions seven times. These violations included the following: (1) Houston unlawfully possessed/used marijuana on March 4, 2023, and May 6, 2024 (Violation One); (2) he was arrested and charged with a state crime for having "No Valid Driver's License" on July 15, 2024 (Violation

Two); (3) a state warrant was issued for his arrest on August 21, 2024, for "Sale of a Controlled Substance" (Violation Three); (4) a state warrant was issued for his arrest on September 12, 2024, for "Burglary of a Structure Causing Damage Over $1,000" (Violation Four); (5) he was arrested and charged with a state "Fleeing and Eluding" crime on October 7, 2024 (Violation Five); (6) he was arrested and charged with a state "Driving While License Suspended/Revoked" crime on October 7, 2024 (Violation Six); and (7) he was arrested and charged with a state "Resisting an Officer without Violence" crime on October 7, 2024 (Violation Seven). Houston pleaded guilty in state court for Violations Three through Seven after spending 82 days in jail. Houston's probation officer filed two petitions, each recommending the court revoke Houston's supervised release.

On February 28, 2025, the district court held a revocation hearing to determine whether Houston violated the terms of his supervised release in both his 2015 and 2021 cases. Houston admitted to Violations One, Two, and Seven, but contested Violations Three, Four, Five, and Six. The government admitted into evidence copies of Houston's guilty pleas and the state court judgments for the challenged violations. Based on this evidence, the district court found that the government had met its burden to prove all seven violations of Houston's conditions of supervised release. The district court then found that the most serious violation was Violation Three and, based on Houston's criminal history category of VI, his guidelines sentencing range in the 2015 case was 51 to 63 months' imprisonment with a statutory

maximum of 60 months.  As for the 2021 case, the district court found that Houston's guidelines range was 33 to 41 months' imprisonment with a 24-month statutory maximum, again based on Violation Three.  Both Houston and the government agreed with the court's calculations of Houston's guidelines ranges.

The district court then gave Houston the opportunity to address the court and provide explanations for the circumstances surrounding the violations, which he did.  Houston admitted having pleaded guilty to the underlying offenses but disputed that he was truly guilty.  His counsel argued that Houston pleaded guilty to these offenses only as a "best interest" plea because the state prosecutor offered him probation instead of jail time.  Houston and the government disagreed as to whether the guilty pleas were proof of the underlying offenses as relevant to his alleged violations of supervised release.  The court, despite already finding that the government proved each violation, granted a continuance to allow the parties to brief the issue.  In the briefing, Houston conceded that his guilty pleas proved the offenses but asked the court to consider his explanations disputing guilt as mitigation evidence.

The district court held another hearing on March 3, 2025.  There, the court again found that Houston's guilty pleas were sufficient to show that he violated the terms of supervised release as to the challenged violations and again gave Houston an opportunity to address the court.

Houston stated that he did not commit the offenses that were at issue and that he had nothing to do with the "sale charge." Houston also asserted he had "been working, 401 account, bank accounts, credit cards, everything" and that he had received custody of his children from Department of Children and Families ("DCF").    Houston said that in negotiating his state plea agreement, the prosecutor had looked at his background and said, "you have been doing good" and offered him probation instead of jail time because Houston had not committed these offenses. Houston urged the court that he had done "[n]othing to break the law."

As to Violation Three, Houston's counsel clarified that he was requesting that the court impose a below guidelines sentence. Houston's conduct justified a lower sentence because although he pleaded guilty to sale of a controlled substance, a Grade A violation under § 7B1.1(a)(1) of the federal sentencing guidelines, he was not the target of the investigation and only aided someone in purchasing the drugs.    Specifically, the target was Houston's coworker and, when the coworker did not show up to work, a confidential informant tried to purchase drugs from Houston instead.  Houston took the informant to a house, went inside to get drugs, sold the drugs to the informant, and then went back inside the house to deliver the money from the sale.  Houston argued that he sold the drugs in exchange for the informant allowing Houston to keep some of them, so the transaction was closer to him purchasing drugs for his own use rather than selling them.  Under that argument, the purchase-instead-of-sale distinction would

result in a Grade B violation instead of Grade A under the guidelines.  *See* U.S.S.G. § 7B1.1(a).

Houston also emphasized that upon release from prison he took full custody of his children to keep his children out of foster care.  DCF assigned Houston a case plan, and he and the children's mother complied with the plan's requirements, so DCF allowed them to retain joint custody of their children.  During this process, Houston also agreed to come up with a payment plan to catch up on his overdue child support obligations that had accrued while he served his prison sentence.  Houston worked as a welder at an aluminum company.  In connection with this job, he had established a 401(k) retirement savings account and a bank account to receive his paycheck deposits.  Houston asserted that in 2023, life got stressful, and he began using substances.  That stressful time was when he agreed to go with the informant to purchase drugs.

Houston also explained that his conviction for driving with a suspended license (Violation Six) was because of past due tickets and a controlled substance violation, and if he cleared those things up, he could receive a valid driver's license.  Houston asserted that the burglary (Violation Four) was more like trespass and criminal mischief because the property he damaged was property he had purchased for the victim and he "broke [his own] things in the burglary."  Additionally, Houston stated that there was a previous incident where the victim tried to shoot him, indicating the volatile nature of their relationship.  She pleaded guilty to improper exhibition of a weapon and was sentenced to probation.

Houston contended the violation for fleeing from police (Violation Five) was only a half mile pursuit during a hurricane while he was trying to "relocate to a safer area" from the storm. But when he realized the officers were stopping him, Houston panicked and took off running. Houston concluded that he knew he violated the terms and conditions of his supervision, but he requested that the court consider the circumstances of the violations, as well as the good things that he was doing while on supervision. Thus, Houston requested the court consider a sentence within the guideline range as if the violation offenses were Grade C violations. That lower range would be 8 to 14 months' imprisonment, which he asked the court to modify to a period of home detention to run concurrently with his 10 years' probation in the state sentence. Houston stressed that such an arrangement would allow him to maintain his employment and provide for his family.

For its part, the government acknowledged that Houston tried to be cooperative, participated in a proffer with the U.S. Attorney's Office and the Drug Enforcement Administration, and provided as much information as possible. Still, the government argued that the cooperation did not rise to substantial assistance. The government also argued that although Houston claimed that he tried to do things correctly and live within the bounds of the law, his violations proved otherwise. Thus, the government requested "an appropriate sentence . . . that potentially still gives him a term of supervised release afterwards," because it thought

"that Mr. Houston, and he even recognizes, will need that continued supervision after."

The district court imposed a total sentence of 60 months' imprisonment—36 months for the 2015 case and 24 months for the 2021 case—which it noted was "a little below the guidelines as to the 2015 case, but not to the extent requested, and it [was] a guideline sentence as to the 2021 case." The district court also imposed five years of supervised release as to the 2015 case. The district court found that there had been a "substantial violation of trust" by Houston: he had received a below-guidelines sentence in the 2015 case, re-offended in 2021, and "then gets out and has committed this pretty serious violation[] of the trust that's there." The court accepted that "the drug sale conviction was maybe not the most traditional type of drug-trafficking that goes on" and stated that peculiarity was the reason it "did vary down from the guidelines which would have been . . . 51 to 60 months for that offense." The district court also noted the burglary and the fleeing and eluding arrests and found that Houston was "someone who just doesn't have a whole lot of respect for the law and needs deterrence . . . but there's a public protection aspect of this too. This is serious conduct, and again, it's a significant breach of the trust that's placed there" when a defendant receives supervised release. The district court acknowledged that "[t]here [wa]s some mitigation. There was . . . some good things happening there with the job, working. Those are good things." It also acknowledged that Houston accepted some limited responsibility by pleading guilty but, overall, the plea was not significant because the court

"kept hearing that [Houston] didn't do anything wrong, even though he's pleaded guilty to multiple felonies, admitting that he did lots of things wrong." The district court reiterated that it thought a "modest variance" from the guidelines was appropriate and applied the same conditions of supervised release as the previous 2015 sentence.

The district court concluded that Houston violated his supervised release for all seven alleged violations, and after considering everything said in court and at previous hearings, the court revoked Houston's supervised release in both the 2015 and 2021 cases. The district court explained that it considered the sentencing guidelines and the 18 U.S.C. § 3553(a) factors as identified in 18 U.S.C. § 3583(e) and found that the sentence it imposed was appropriate to deter future illegal conduct and protect the public.

Houston objected to the sentence as "being greater than necessary." The court noted the objection but did not alter the sentence. Houston timely appealed the revocation in both the 2015 and 2021 cases. We granted Houston's unopposed motion to consolidate his appeals.

## II.    Discussion

Houston argues that the district court imposed a substantively unreasonable sentence when it ordered the sentences to run consecutively instead of concurrently. He also contends that the court improperly analyzed the § 3553(a) factors in not attributing more weight to Houston's efforts to hold a job and care

for his children. Houston further believes the court should have considered the three months he spent in prison for the state charges in determining the appropriate sentence. The government disagrees, arguing that the guidelines-range combined sentence below the statutory maximum was reasonable, included a downward variation for the violation in the 2015 case, and considered the § 3553(a) factors. And the government contends that Houston's three-month incarceration on the state charges was irrelevant because it was punishment for the state violations, not for his supervised release violations.

We review the substantive reasonableness of a district court's sentence upon revocation of supervised release for an abuse of discretion. *United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016). The party challenging a sentence bears the burden of establishing that the sentence is unreasonable based on the facts of the case and the § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). And we review the imposition of consecutive sentences for abuse of discretion. *United States v. Covington*, 565 F.3d 1336, 1346 (11th Cir. 2009).

Revoking supervised release requires the court to consider the defendant's history and characteristics, the crime's nature and circumstances, and the need for the sentence to afford adequate deterrence and protect the public from further crimes of the defendant, among other factors. 18 U.S.C. § 3583(e) (referencing factors listed in 18 U.S.C. § 3553(a)). While the district court must consider the statutory factors in imposing a sentence, it need not

discuss each factor. *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008). It also need not weigh all the factors equally so long as the court considers the necessary factors. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).

Along with the statutory factors, the district court should also consider the particularized facts of the case and the sentencing guideline range. *Id.* at 1259-60. A district court abuses its discretion if, among other things, it "gives significant weight to an improper or irrelevant factor." *Id.* at 1256 (quotation omitted). We give "due deference" to the district court's consideration of the sentencing factors because it has an "institutional advantage" as the factfinder. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (quotation omitted).

District courts "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings." *Setser v. United States*, 566 U.S. 231, 236 (2012). The § 3553(a) factors guide the court's exercise of discretion in these decisions. 18 U.S.C. § 3584(b). Per the sentencing guidelines, a term of imprisonment resulting from a supervised-release violation "shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release." U.S.S.G. § 7B1.3(f)

(2024).[1]  A sentence below the statutory maximum for the crime is an indicator of reasonableness.  *United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014).  "Although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily . . . expect a sentence within the Guidelines range to be reasonable."  *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (alteration adopted) (quotations omitted).

Here, the district court's total 60-month sentence is substantively reasonable.  The district court considered and credited the mitigating evidence Houston presented, including the fact that he was working and that his drug sale conviction involved atypical facts for that crime.  But the record also shows that Houston betrayed the court's trust when he violated his supervised release terms seven times in a variety of ways.  These violations indicated to the court that its sentence needed to deter Houston's illegal conduct and protect the public.

To be sure, as Houston points out, the district court did not specifically mention Houston's efforts to care for his children.  But the law does not require the court to specifically mention every fact it considered.  *See Williams*, 526 F.3d at 1322.  Consistent with this principle, it was sufficient that the district court made clear that it

---

[1] This section of the sentencing guidelines was amended effective November 1, 2025.  *Compare* U.S.S.G. § 7B1.3(f) (Nov. 2024) *with* U.S.S.G. § 7B1.3(f) (Nov. 2025).  The November 2024 version was in effect at the time of Houston's sentencing for the supervised release violations on March 3, 2025.  *See* U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.").

had considered everything said during the hearings, including the "good things" that Houston had done.  Nor was the district court required to individually weigh the mitigating factors, as Houston suggested, for Houston's sentence to be reasonable.  *See Rosales-Bruno*, 789 F.3d at 1254.  The district court expressly stated that it had considered the § 3553(a) factors, the sentencing guidelines, and everything said at the hearing, all together indicating a reasonable sentence.  Furthermore, the district court granted a "modest" downward variance for the 2015 sentence violation and imposed a within-guidelines sentence as to the 2021 sentence violation, which together are another indication that the sentence was reasonable.  *See Dougherty*, 754 F.3d at 1364; *Hunt*, 526 F.3d at 746.  Thus, given our precedent, we cannot conclude that the district court abused its discretion in imposing Houston's sentence.  *See Rosales-Bruno,* 789 F.3d at 1259-60.  And Houston has not borne his burden to show otherwise.  *See Tome*, 611 F.3d at 1378.

Finally, the district court did not err in not discussing Houston's three-month imprisonment on the state charges.  That punishment stemmed from his violations of state law, and while those violations provided part of the basis for the court to revoke Houston's supervised release, the sentence the court imposed was within its discretion.  *See Setser*, 566 U.S. at 236.

### III.    Conclusion

The district court's decision to revoke Houston's supervised release was substantively reasonable and not an abuse of discretion.

**AFFIRMED.**